LUCY HARWOOD, HARDESTY, *et al. vs.* JOSHUA JONES.—*December*, 1839.

Under the act of 1832, ch. 302, sec. 5, it is too late to object in the Court of Appeals to the admissibility of evidence, upon the ground that the witness from whom it was derived, was examined without notice to the party objecting, or was a party to the cause; the objection should be taken by exception in the Chancery Court.

The answer of a defendant in Chancery is not evidence against the other defendants, though prior to the filing of the answer, the former may have transferred to the latter all his interest in the subject matter of the controversy.

When a contract is reduced to writing, parol evidence of its contents is inadmissible, in the absence of all proof of fraud, surprise, or mistake.

A court of equity will not permit a party, who has received a valuable consideration for the performance of a parol agreement, to be fulfilled more than a year from its date, to set up the statute of frauds as a bar to its specific execution, considering such cases as without the purview of the statute.

The statute of frauds prohibits the establishing the liability of one person for the debt of another by oral evidence, but the statute does not apply to the case of a promise to a debtor, upon a full consideration, to discharge a debt due from such debtor to a third person.

A party is not precluded from going into Chancery for relief against a judgment, upon the ground that he should have defended himself at law, when the application to equity rests upon an engagement embraced by the stat-

ute of frauds, and void at law; though attended by circumstances which, in equity, take it out of the operation of the statute.

Nor is he so precluded when the defence is upon acts done in execution of an express trust.

Objection cannot be taken in the Court of Appeals to a variance between the allegations of the bill, and the proofs, unless exceptions are filed in the Court of Chancery according to the 5th section of the act of 1832, ch. 302.

In an action by an assignee of a single bill, as authorised by the act of 1829, ch. 51, all and the same defences, legal or equitable, are open to the debtor, as if the action was brought in the name of the assignor.

If however the assignee, prior to the assignment, seeks information upon the subject from the debtor, and he withholds it, the latter must submit to the consequences which are visited upon a fraudulent concealment.

All partnership property, and responsibilities, upon the death of one partner, survive to the survivor; and in a bill in chancery in relation thereto, it is not necessary to make the personal representative of the deceased partner a party.

APPEAL from equity side of *Frederick* County Court.

The bill in this cause was filed on the 21st January 1834, by *Joshua Jones*, alleging that, a certain *John R. Jones* borrowed the sum of $2000 from *Lucy Harwood*, and to secure the same gave his note under seal, bearing date 4th August 1829, with the complainant as security therein, and carrying interest from date; that the said note was delivered to the said *Lucy*, and remained in her hands for some time; that *John R. Jones* was in mercantile business in *Baltimore*, and became largely indebted; that the firm of *Samuel Jones* and *Richard S. Hardesty*, had endorsed for him to a considerable amount, and becoming alarmed therefor, called upon the said *John R. Jones* for indemnity; that he, in order to quiet the fears of *Jones & Hardesty*, did in February 1830, give to the said *Samuel Jones*, the acting partner of the said *Jones & Hardesty*, a bill of sale of all his stock of goods in the store and cellar he then occupied in the city of *Baltimore*, and all other personal property which he had in his possession or in any manner belonging to him; that the bill of sale, though absolute upon its face, was, at the time it was executed and delivered to the said *Samuel Jones*, only designed as collateral security to the firm of *Jones & Hardesty*, to secure them against any loss that may arise from their

said endorsements, and was not to have been put upon record until it met with the approbation of complainant, who had be·come responsible for the said *John R. Jones* as security in *Lucy Harwood's* note; that as soon as complainant heard of the above mentioned transaction, between the said *John R. Jones* and *Samuel Jones*, as the acting partner for and on behalf of *Jones & Hardesty*, he felt some anxiety in relation to his responsibility for the said *John R. Jones* to the said *Lucy*, and immediately went to *Baltimore* to investigate the whole matter, and so far as he could with propriety to guard against his aforesaid responsibility; that on his arrival *John R. Jones* expressed great confidence in his ability to meet all demands upon him, and in order to quiet the fears of complainant, offered to transfer to him other notes as collateral security to protect him from any loss that might arise by virtue of his responsibility in *Lucy Harwood's* note, but *Samuel Jones*, who was one of the firm of *Jones & Hardesty*, and acting for, and on behalf of the said firm, contrary to the aforementioned understanding between the parties, placed upon the records of *Baltimore* county the aforementioned bill of sale, and now pressed for the transfer of the books, notes and accounts of the said *John R. Jones*, stating that, he had a bill of sale of the goods and other per·sonal effects, and that unless the proposed transfer was made, he would proceed under the bill of sale, and immediately close up the store of the said *John R. Jones*. To this proposed transfer the complainant objected, unless he could see how *Lucy Harwood's* note could be provided for; that the said *Samuel Jones*, acting for, and on behalf of the said *Jones & Hardesty*, and for their benefit, then promised that, if the complainant would waive his objection to the proposed transfer of the said books, notes and accounts, that he would obligate himself to pay out of the effects of the said *John R. Jones*, the said note, and that if the effects of the said *John R. Jones* should not hold out to pay his debts, that the complainant should under no circumstances lose more than two hundred dollars. With this understanding, your orator did not accept the proposed transfer offered on the part of the said *John R.*

*Jones* as collateral security, and waived his objections to the transfer to the said *Samuel Jones*, acting on behalf of the firm of *Jones & Hardesty*, and the transfer of the books, notes and accounts were accordingly made.—That although the said bill of sale and transfer of books upon their face appear to be to the said *Samuel Jones* in his individual capacity, yet in truth, and in fact, the said transfers were made to him as the acting partner of *Samuel Jones* and *Richard S. Hardesty*, with the consent of the said *Hardesty*, and for the benefit and advantage of the firm: that at the time the books, &c., of the said *John R. Jones* were transferred as aforesaid, it was understood and agreed between the parties, that the said *Samuel Jones* and *Richard S. Hardesty* should take possession of the goods and other personal effects of the said *John R. Jones*, mentioned in the said bill of sale, and make sale of them to the best advantage; to collect all monies due to the said *John R. Jones* on notes, open accounts, or in any manner otherwise, and to pay his debts as soon as the prudential management of his affairs would permit: that the said note of *Lucy Harwood* was particularly to be provided for, and paid as soon as it could be conveniently done; and that the said *Samuel Jones* and *Richard S. Hardesty* were to pay the interest accruing on the same until paid; it being for borrowed money; and by the custom of merchants always considered entitled to a preference among mercantile men, where the party is not a petitioner for the benefit of the insolvent laws, but settles his affairs with his creditors by reference; that it was further understood that the said *Jones & Hardesty* were to furnish the said *John R. Jones* with the sum of $500 to take care of himself and family; and that as soon as all the debts of *John R. Jones* were paid, that the said *Samuel Jones* and *Richard S. Hardesty* were to give him up his books, and all other property that should remain, and assist him in recommencing business; all which it was supposed could be effected by the fall of 1830, and in case it should so result, which was not anticipated, that the effects of *John R. Jones* should not be sufficient to pay all his debts, that then complainant was to be answerable for $200 upon *Lucy*

*Harwood's* note, and the said *Jones & Hardesty* were to pay the balance; that *Jones & Hardesty*, with this understanding and agreement, did accept and enter upon the execution of the trust reposed in them as aforementioned, and went on to sell the goods and personal property of the said *John R. Jones*, mentioned in the said bill of sale, and to collect debts due him to a considerable amount, to what extent your orator has no means of ascertaining. But complainant has been inform= ed and so charges, that the goods and other personal property, and the debts due to the said *John R. Jones*, and which passed into the hands of *Jones & Hardesty*, were amply sufficient, with proper management of the trust reposed in them, not only to pay the amount for which they had endorsed, and the note of *Mrs. Lucy Harwood*, but all other debts of the said *John R. Jones;* that neither *Jones* nor *Hardesty* has executed the said trust, nor rendered any account thereof, although repeatedly requested so to do; that *Samuel Jones* died about the 15th October 1831, and that *John R. Jones* has since filed his bill in Chancery, against the said *Richard S. Hardesty*, the surviving partner of *Samuel Jones*, and *Ann Jones*, executrix of *Samuel Jones*, alleging the aforementioned trust, and claim- ing a large balance; that *Samuel Jones* during his life regard- ed himself bound to pay the said note of *Lucy Harwood*, and by virtue of his undertaking to pay the debts of the said *John R. Jones*, and from that time punctually paid the interest ac- cruing upon it so long as it remained in the hands of the said *Lucy Harwood*, and the said *Hardesty* since the death of *Sam- uel Jones* has paid the interest up to August 1832; that about the time of this transaction the said *Jones & Hardesty* were partners in another firm, composed of *Dennis H. Battee, Sam- uel Jones* and *Richard S. Hardesty;* that although the parties composing this last mentioned firm, became desirous to dis- solve their connexion, and it was accordingly agreed that the said *Dennis H. Battee* should purchase out the other two mem- bers of the firm, yet when they were about to carry into effect their proposed dissolution, *Samuel Jones* informed the said *Dennis H. Battee* that the said *Lucy Harwood* had the afore-

mentioned note of his brother *John R. Jones*, with *Joshua Jones* as security therein, which said note *Jones & Hardesty* were bound to pay, and that if he would obtain the said note from said *Lucy*, they, *Jones & Hardesty*, would take it in part of their interest in the house of *Battee, Jones & Hardesty*, which they were then about dissolving; that the said *D. H. Battee* did accordingly purchase the said note from his mother, the said *L. H.*, who transferred it to him by endorsement, and the said *Battee* transferred and delivered it to the said *Samuel Jones* and *R. S. Hardesty* in part payment of their interest in the last mentioned firm; that by reason of the arrangement made by the said *Jones & Hardesty* with the complainant, in relation to the note of *Lucy Harwood*, and by reason of the fact of *Jones & Hardesty* undertaking to pay the debts of *John R. Jones*, and having in their hands a large amount of funds belonging to the said *J. R. J.*, and still in the hands of *R. S. H.* in trust, subject to the payment of the said *J. R. J.'s* debts, more than sufficient therefor, the said note of *Lucy Harwood* was in equity and law cancelled and paid the moment it reached the hands of *Jones & Hardesty;* that after the death of *Samuel Jones*, the said *R. S. Hardesty*, as surviving partner, has gone on to manage the concerns of the said *John R. Jones*, and in that character delivered the said note to *William E. Mayhew* and *J. G. Bernard*, as collateral security for a small debt due them by *J. & H.*, though in fact and law it had been cancelled and paid, and that *Mayhew & Bernard* have no equity therein superior to that of *Jones & Hardesty;* that suit has been brought upon the said note at law in the name of *L. H.* for the use of *Mayhew & Bernard* against complainant and the said *John R. Jones*, the principal in said note, and judgment obtained on the 5th November 1833, for the whole amount thereof, with interest, &c.; that execution has been issued thereon, and the property of complainant levied upon in satisfaction of the whole amount of said judgment, and must be sold unless prevented by the interposition of this court.

The bill then proceeded to pray for a subpœna and injunc-

tion against the various parties concerned in enforcing the note
of *Lucy Harwood.*

The complainant filed with the bill—

1. A copy of the single bill of *John R. Jones* and *Joshua
Jones,* dated Annapolis, 4th August, 1829, payable three years
after date, to *Lucy Harwood,* for $2000, endorsed *Lucy Har-
wood* and *Dennis H. Battee.*

2. The bill of sale from *John R. Jones* of "all the entire
stock of dry goods, merchandize, personal property of every
description, now in the store and cellar of house No. 125, in
*Baltimore* street, in *Baltimore* city, and all the property now
in my possession, or belonging or in any way claimed by me,
of which I now have possession, or claim upon, to *Samuel
Jones.*" · This deed was absolute, and acknowledged and duly
recorded.

No. 3. Short copy of judgment, *Lucy Harwood* use of *W.
E. Mayhew & Co. vs. John R. Jones and Joshua Jones.*

Upon this bill subpœna and a writ of injunction was issued,
prohibiting all further proceedings upon the judgment at law,
&c.

The answer of *Richard S. Hardesty* admitted that, *John R.
Jones* borrowed of *Lucy Harwood* the sum of $2000, and gave
his note with *Joshua Jones* as security; that *J. R. J.* became
involved; that *Jones & Hardesty* endorsed for him to a conside-
rable amount, and that he, with a view to secure their firm
from liability, made the bill of sale to *Samuel Jones* exhibited
with the bill of complaint. The answer then denied that the bill
of sale was not to be recorded without the approbation of the
complainant. It also denies that *S. J.* told the complainant
that he would obligate himself to pay out of the effects of the
said *John R. Jones,* the said note to *Lucy Harwood* if the
said *Joshua Jones* would consent to the transfer mentioned in
the said bill; but that the said *Samuel Jones* did say to the said
complainant that he, the said *Samuel,* would try to collect
enough out of the effects of the said *John R. Jones* to pay the
said note to *Lucy Harwood* after the liabilities of the said firm
to *Jones & Hardesty* were discharged, if the said *John R. Jones*

would consent to his doing so, but the said *J. R. J.* would not consent thereto, and insisted upon the understanding, that as soon as the said paper endorsed by *Jones & Hardesty* was paid, his books and effects were to be returned, and that the note to *Lucy Harwood* would not be due for thirty months, and that he would pay it himself; that the said *Samuel Jones* did not before the said assignment and transfer of the books, notes and accounts promise to pay the note of the said *Lucy Harwood.* But that six or eight months after *J. R. J.* had made the transfer, the complainant attempted to make an arrangement with the said *Samuel Jones* for the payment of the said note, and after being much abused and teased by the complainant, the said *Samuel* did say to the said *Joshua,* that if he would never mention his name in the business and get *John R. Jones* to bind himself, that he, the said *John R. Jones,* would directly nor indirectly mention his name in the business, and give him the said *Samuel* a receipt in full; he the said *Samuel* would receive two hundred dollars of the said complainant and pay the said note; but the said *John R. Jones* would not consent to any such arrangement. The defendant further answered, that the said bill of sale and transfer were made to the said *Samuel* for the express purpose of securing the payment of many notes to a large amount endorsed by the said firm of *Jones & Hardesty,* and that the said *Samuel Jones* was to sell the goods and collect the debts due *John R. Jones,* and pay the paper they were on, and then return the surplus if any to the said *John R. Jones,* but that the said *Samuel Jones* never made an agreement with the said *John R. Jones* or *Joshua Jones* to provide or pay for the said note, and further, that the said *Samuel Jones* made no agreement to pay the interest on the said note, and would not pay the interest on the same; but that when the said *Lucy Harwood* called for it he paid her one or two quarter's interest, but told her at the same time he would not pay her any more, as *John R. Jones's* effects would not pay his debts; that borrowed money has the preference over other claims; that the said *Samuel Jones* during the year 1830 did furnish money to the said *John R. Jones;* that the said *S. J.*

was to give up the books and effects as soon as the endorsed paper was paid, and this the defendant is still willing to do, but that said firm is not yet paid; that the said two hundred dollars mentioned in the said bill, was talked of eight or ten months after *John R. Jones* had quit business, but the said *Samuel* never at any time bound himself or the firm to pay the said note. The answer then admitted the partnership between *Jones* and *Hardesty*, and that they sold out to *Battee;* they did not tell him they were bound for said note, but that it was good, and they would receive it in part if he would borrow it in order to assist the said *Battee* to some capital; that in taking the said note they did not thereby intend to extinguish or pay it for the said *John R. Jones*, as they had no funds for that purpose, and this defendant considering the said note in full force against the said *John R. Jones* and the said complainant, did on the 17th November 1831 transfer the said note to *Wm. E. Mayhew & Co.*, to whom the firm of *Jones & Hardesty* were indebted $2,709.06. This defendant says that he cannot positively aver that no such promises were made by the said *Samuel Jones* as are alleged in the said bill, because it is possible that such promises, or one of them, may have been made by the said *Samuel Jones* without previous consultation with this defendant, and without subsequent notice to this defendant; but that if made, they were without the knowledge or consent of defendant previous or subsequent, actual or constructive, and this defendant does not believe that the said *Samuel Jones* made all or any of the promises alleged in said bill, touching the payment of said note; that the same was delivered by defendant to *Wm. E. Mayhew & Co.* as a mode of payment, and not by way of pledge or by way of collateral security, and they had no notice of any defence thereto; that the promises of *Samuel Jones* if made did not bind his partnership; that the promises alleged to have been made by him are void, without consideration and within the statute of frauds, as being only by parol; that *Jones & Hardesty* never intended to cancel said note, and its receipt from *D. H. Battee* as aforesaid would not extinguish it.

The answer of *W. E. Mayhew* admits that he received the note in question from *Jones & Hardesty* to be collected, and when collected to be applied towards payment of the debt of $2800, due from the firm of *Jones & Hardesty* to *W. E. Mayhew & Co.*, and the institution of the suit in *Frederick* county thereon to enforce its payment. This defendant was ignorant of the contract alleged in the bill.

The answer of *John R. Jones* substantially repeats the allegations of the bill; insists that *Jones & Hardesty* were bound to pay *Lucy Harwood's* note, and had received sufficient effects to discharge it.

The answer of *Dennis H. Battee* alleged that *Jones & Hardesty* were bound to pay *Lucy Harwood's* note out of the effects of *John R. Jones*, and *Samuel Jones* induced this defendant to procure that note, admitting the liability of *Jones & Hardesty* to pay it, and they would receive it from him as a payment, and then proceeded to detail the admissions of *Samuel Jones*, now deceased, in relation to said note in various particulars.

The answer of *Lucy Harwood* insisted, that *Samuel Jones* informed her that her note for $2000 was to be paid out of the effects of *John R. Jones*, and that *Jones & Hardesty* were pledged to release *Joshua Jones* from his liability for *John R. Jones*.

The complainants filed a general replication and a commission was issued. The questions decided upon the evidence are sufficiently set forth in the opinion of this court.

At the final hearing of the cause *Frederick* County Court (SHRIVER and T. BUCHANAN, A. J.) decreed that the injunction granted in this cause should be made perpetual, and that the defendants pay complainant's costs. From this decree the defendants appealed.

The cause was argued before ARCHER, DORSEY and CHAMBERS, J.

By W. SCHLEY and WORTHINGTON for the appellants, and By PALMER for the appellees.

Dorsey, J., delivered the opinion of this court.

Before we examine the facts in this case, it is necessary to dispose of the questions raised, as to the admissibility of portions of the evidence taken in the cause, because upon their determination will in some measure depend what are the facts on which we are called to decide.

The first objection of this kind was taken to the testimony of *Charles A. Warfield,* who it appears was examined as a witness on the part of the appellants, without any previous notice thereof being given to the appellee. Previous to the act of assembly of 1832, ch. 302, sec. 5, such an objection to testimony, if taken in this court, must have been sustained. But the act of assembly referred to, is conclusive against the allowance of any such objection in the appellate court; unless it appears by the record that it was raised by way of exception in the court below.

The next objection to the testimony is, to the evidence of *Dennis H. Battee,* who, it appears, though a defendant in the cause, was examined under the commission, without a previous order for that purpose having been obtained from the county court. Had this irregularity been made the subject of an exception to the testimony in the county court, it might have been available to the appellants in this court. But no such exception having been there made, the act of 1832 in terms the most imperative prohibits its being "noticed, or determined, or acted upon" by this tribunal.

The questions of evidence following those of which we have spoken, arise upon the answer of *Lucy Harwood,* one of the defendants in the court below. It is insisted, on behalf of the appellee, that her answer is evidence against her co-defendants, who claim title under her. In support of this position it is asserted, that the declarations or answers of a nominal plaintiff, after he has assigned all his interest in the *chose in action* sued on, are evidence at law against the *cestui que use:* and being so at law, they are equally so in a court of equity. Without stopping to examine the correctness of the first branch of this proposition, that such declarations or answers are evi-

dence at law to destroy the rights of the beneficial plaintiff; does the second branch of the appellee's position follow as a necessary consequence of the admission of the first? We think not. The principle, with the reasons upon which it is founded, that the answer of one co-defendant is not evidence against another, is stated with great perspicuity by the learned judge who delivered the opinion of this court in the case of *Hayward vs. Carroll,* 4 *Harr. & John.* 518, from which the following is an extract: "It is an established principle of evidence, that the answer of one defendant cannot be read in evidence against a co-defendant. If the complainants were interested in establishing a fact by the evidence of a co-defendant, they might have examined him, as a witness, on interrogatories, and the witness then would have been subject to the cross-interrogatories of the other defendant. To withhold from such defendant the privilege of cross-examination, would be unjust, and this injustice must necessarily result from the practice of permitting the answer of one defendant to be read in evidence against a co-defendant." Now a nominal plaintiff cannot at law be compelled by the defendant to submit to examination as a witness in the cause. If we were then for this reason to concede the correctness of the *first branch* of the appellee's position, the second branch is not established by it; because, it is sustained by no such reason. A defendant in chancery, a nominal party, may be examined as a witness against his *cestui que use,* a co-defendant. It must, however, be admitted, that the appellee has referred to two adjudications, which, if followed by this court, would render the answer of *Lucy Harwood* evidence against her co-defendant *Mayhew.* And these decisions emanate from that learned tribunal, with which we have ever concurred with confidence and differed with distrust.

The cases referred to are those of *Field vs. Holland,* 6 *Cran.* 8, and *Osborn vs. The United States Bank,* 9 *Wheat.* 738. We have given to them a thorough examination and respectful consideration, but not being convinced of their correctness by the reasons assigned in their support, and being unable to reconcile them to an otherwise unbroken series of authorities,

both *English* and *American,* we do not hold ourselves bound to conform to them.

Entertaining these views, we cannot do otherwise than say, that the answer of *Lucy Harwood* is no evidence against the co-defendants. If her testimony were material to the appellee, he should have obtained it by examining her as a witness in the customary mode. As authorities in point on this branch of the case, see *Phœnix vs. Dey & al.,* 5 *Johns.* 412. 1 *Stark. Ev.* 284, 285, and the cases there referred to. *Hughes & Ballinger vs. Worley,* 1 *Bibb.* 200. *Bullett vs. Marshall,* 2 *Bibb.* 470. *White vs. Robinson,* 1 *A. K. Marshall,* 567. *Hunt & Blanton vs. Stevenson,* 1 *Ib.* 570.

The next objection to the testimony in behalf of the appellee is, that it is inadmissible, being oral evidence of a written contract between *Samuel, Joshua* and *John R. Jones,* which written contract, it is alleged, is the assignment executed by *John R. Jones to Samuel Jones.* If the oral contract referred to, had been reduced to writing by the parties, or if it was intended that the assignment should be such written contract of the parties; then might it be contended, in the absence of all proof of fraud, surprise or mistake, that the oral evidence offered by the appellee was inadmissible. But it is manifest from the proofs in the cause that the agreement entered into never was reduced to writing; and there is nothing in the record to show that it ever was intended to be reduced to writing. The assignment was not intended to be the written agreement of the parties; it was nothing more than an act done by one of the parties in execution of the oral agreement into which he had entered. With as much propriety might it be contended, if the assignment, instead of being in writing, had been orally made by an actual delivery to the trustee, under and in conformity to the agreement which had been previously entered into, that such oral assignment or delivery was the only appropriate evidence that could be offered of the agreement. The oral contract in this case, made between the parties (apart from the time of its complete execution being postponed to a period beyond a year from its date, of the con-

sequence of which we shall hereafter speak,) is as valid and obligatory, as if it had been reduced to writing. Suppose then the contract, at the time it was made, had been reduced to writing and signed by the parties, and subsequently, in execution thereof, this assignment had been executed by *John R. Jones*, would it be pretended that, the assignment was the written contract of the parties, and superseded and annulled the written agreement previously executed? Certainly not. So neither does it supersede or annul the valid oral contract previously entered into. It was not designed to be the written evidence of the contract of the parties, but the mere act of one of them, performed in execution of it, and upon no principle of reason, law or justice, can it have the operation attempted to be imputed to it. The testimony therefore is not objectionable on this ground.

It has been objected to, also, on another ground, that being to be performed more than one year after the time the contract was entered into, the statute of 29 *Car.* 2, *chap.* 3, which has been pleaded, prohibits the establishment of the contract by other than written proof.

We think this defence can avail the defendants nothing. Under the assignment *Jones & Hardesty* have received a full and valuable consideration for the performance of their part of the agreement, and to permit them or those claiming under them, now to set up the defence of the statute in bar to the specific execution of the contract, would be a fraud upon the appellee, and in such cases courts of equity, interposing for the prevention of frauds, will decree the specific execution of the contracts, regarding such cases as without the purview and design of the statute.

And upon the same principle, they will interfere by injunction in a case like the present, to restrain a plaintiff from enforcing a legal right against all equity and conscience. Another objection insisted on against the testimony, is, that it is an attempt to establish by oral proof, a promise to pay the debt of another, contrary to the statute of frauds. If this were an effort on the part of a creditor, seeking to charge a third per-

son with a debt already due to him from another, there might be some plausibility in the argument.

It would be an effort to establish orally, two subsisting liabilities to the same person, for the same debt; which is clearly prohibited by the statute.    But such is not the design, nor the effect of the testimony offered in this case.    It is a new and original promise to a debtor, founded (as must be assumed in this aspect of the case) upon a full consideration to discharge a debt due by such debtor, and is no more a case within the statute, than it would have been if the promise had been, instead of paying a subsisting debt, to pay to the debtor a sum of money of the same amount.

Much has been said in relation to the declarations of *John R. Jones*, touching the matter in dispute in this cause.    'Tis true, they are testimony; no exception to their admissibility having been taken in the county court, as required by the act of 1832.    But when discredited by the answer of *John R. Jones*, which is competent evidence for that purpose, they are entitled to no weight or consideration in the determination of the case.

Having disposed of the several objections raised on the evidence in the cause, we will now proceed to consider the several legal grounds, which have been urged in bar to the relief sought by the appellee.    And first in its order, is the objection to the jurisdiction of this court; the equity, it is alleged, upon which relief is sought in this case, being a complete legal defence, of which the appellee might and ought to have availed himself in the county court in the suit upon the bond. To this objection the answer is natural and easy.    If the agreement were, as we are inclined to regard it, a promise on the part of *Jones & Hardesty* to pay *Lucy Harwood's* bond when it became due, more than two years afterwards, it was, as contended by the appellants, embraced by the statute of frauds, and therefore void at law, and could only be enforced in a court of equity upon the principles before stated.    Upon another ground we think the appellee was not bound to have made his defence at law.    The defence rested altogether upon mat-

ters done in execution of an express trust, where the effect of trustee's acts mainly depended on his intention in doing the acts. In such a case we think the appellee was not bound (conceding to him the power to have done so) to have made his defence at law, but was at liberty to have gone for redress into a court of equity, where he might purge the conscience of the trustee in relation to the subjects matter in controversy.

The next reason assigned for the reversal of this decree is, that the promise of *Jones* in behalf of *Jones & Hardesty*, to pay *Lucy Harwood's* bond, is a *nudum pactum;* and therefore, of no obligation either at law or in equity. After reading the testimony, it is difficult to conceive upon what ground such a suggestion could have been made. We do not mean to discuss the question, further than to say, that the consideration proved, is abundantly sufficient to support a promise at law or in equity.

The decree of the county court, it is said, must be reversed on account of the variance between the allegations in the bill and the proofs in the cause. Whether there be such variance or not, we have deemed it unnecessary to inquire, because, according to our interpretation of the 5th section of the act of 1832, ch. 302, it is immaterial whether there exist such variance or not; no exceptions having been filed in the court below, either to the admissibility of the evidence, or the sufficiency of the averments of the bill, the complainant is entitled to an affirmance of the decree in this court, if warranted by the proof, whether his *allegata* and *probata* correspond or not.

In behalf of the appellant *Mayhew* it is insisted that, under the act of 1829, ch. 51, he is authorised as assignee of the bond, to sue thereon in his own name, and consequently, that he took the bond discharged from the equity interposed by the obligor to its recovery. Without stopping to examine how far *Mayhew* is such an assignee, as under the act of 1829 is competent to sue in his own name, let us see how far, under the act of assembly, his rights as against the obligor have been protected and enlarged. The preamble to the act, as well as

the enacting clause, shews that the design of the legislature *was* no further to extend the powers, or enlarge the rights, of the assignee, than to enable him to sue in his own name. And the saving clause reserves to the obligor or debtor, "all such legal or equitable defence, as might or could have been had and maintained against the assignor or assignors, at the time and before notice of such assignment, in the same manner and to the same extent as if no such assignment had been made." We think, therefore, that this act of assembly does not impair or change the rights, either legal or equitable, of the obligor or debtor, whether the suit be instituted in the name of the assignor or assignee. But it is insisted that the equitable relief sought by the appellee in this case, cannot be extended to him, because *Mayhew* the assignee is a *bona fide* purchaser for a valuable consideration without notice. The assignee before us, stands entitled to no such protection, either upon principles of law or equity, if he were such a purchaser, or upon the facts in the cause as disclosed by the record. His answer—the only evidence upon the subject—demonstrates that he never purchased the bond; that he never paid or advanced one dollar as the consideration for the assignment; on the contrary, that it was placed in his hands for collection, and that when collected, he was to carry the proceeds to the credit of a debt antecedently due to him from *Jones & Hardesty*. *Mayhew* stands before the court clothed with none of the attributes of a *bona fide* purchaser, without notice. But suppose he did—as respects the equities or defences of the appellee, either at law or equity, his condition is unchanged. He who takes an assignment of a *chose in action* not negotiable, takes it subject to all the legal and equitable defences of the obligor or debtor, to which it was subject in the hands of the assignor. If he accepts the assignment in ignorance of their existence, without using the appropriate means of acquiring a knowledge of them, the consequences are the merited result of his negligence. It is his duty, if he wishes to avoid the effects of secret equities, to seek information from the obligor or debtor, who, if he withholds it when properly applied to for its disclo-

sure, must submit to the consequences which are visited upon fraudulent concealment.

An objection has been raised to the decree, that a necessary party is not before the court; that the administratrix of *Samuel Jones* should have been made a defendant. We think this objection furnishes no ground for the reversal of the decree of the county court. The complainants seek no decree, and, according to the proofs in the cause, could obtain none against the representatives of *Samuel Jones*. In receiving the assignment, he acted for and in behalf of *Jones & Hardesty*, and was in effect the mere instrument, or conduit, through which the property assigned passed to them. By his death all the partnership property and responsibilities of the firm, devolved on *Hardesty*, as the surviving partner, who is bound for the performance of all contracts and engagements in relation to the partnership business, entered into by his deceased partner, for the benefit and in behalf of the firm.

The various legal objections to the decree before us having been examined, we must now see how far the proofs in the cause entitle the appellee to the relief he has received at the hands of the county court. Looking to the bill of complaint and the answer of *Mayhew*, and the uncontradicted testimony of the witnesses, *William Turnbull* and *Dennis H. Battee*, it satisfactorily appears to this court that *Samuel Jones* did, for and in behalf of the firm of *Jones & Hardesty*, for a valuable consideration, moving from *John R. Jones*, promise to pay the bond for $2000, to *Lucy Harwood* at its maturity, out of the funds received under the assignment made by *John R. Jones*; and that in the event of the insufficiency of those funds for that purpose, that *Joshua Jones* should contribute to its payment to the amount of two hundred dollars. It does not sufficiently appear by the proof in the record, that an adequate amount of the funds collected under the assignment, and applicable to the payment of the bond, have come into the hands of *Jones & Hardesty*, or of *Hardesty* the surviving partner. The *pro forma* decree of the county court is therefore erroneous in enjoining the judgment for the whole amount. The perpetual

injunction awarded by the decree of the county court should have left the plaintiffs at liberty to issue an execution on the judgment, for the sum of two hundred dollars, with interest thereon from the day when the bond was payable, and costs of suit.   This court will therefore pass a decree reversing the *pro forma* decree of the county court, but without costs, and decreeing a perpetual injunction as above mentioned, but without costs to either party.

DECREE REVERSED IN PART.