LEDNUM, INDIVIDUALLY AND AS EXECUTORS, ET AL. *v.* BARNES
(Two Appeals in One Record)
[No. 96, October Term, 1953.]

232

*Decided March 23, 1954.*

234

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Henry M. Decker, Jr.,* and *J. Cookman Boyd, Jr.,* with whom were *Henry P. Walters* and *Godfrey Child* on the brief, for the appellants.

*William H. Price,* with whom were *Staton, Whaley & Price* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Worcester County.

On August 23, 1948, Wilson K. Barnes, appellee here, filed a bill of complaint against the appellants in which he sought the discovery and accounting by the appellants of the proceeds or the reinvestment of the proceeds of two mortgages aggregating the principal sum of $16,000.-00. After many pleadings and a prior appeal to this Court, which appeal was dismissed here, *Barnes v. Lednum,* 197 Md. 398, the chancellors heard testimony in the case in open court. By decree they ordered the appellants as executors of the estate of Robert I. Lednum, hereinafter referred to as Mr. Lednum, to pay the appellee the sum of $16,000.00, with interest from the date of the decree and also required the appellants individually to pay into the estate such sum or sums as might be necessary to provide for the aforesaid payment. From that decree, appellants appeal.

For the purposes of this case the facts follow. On October 25, 1926, Ella M. Wilson, prior to her marriage to Mr. Lednum, executed a will whereby she left her

entire estate to her nephew, Wilson K. Barnes, the appellee here. Ella Wilson Lednum died on December 17, 1937, survived by her husband and leaving said will. Her net personal estate including the two mortgages was $18,107.40. Her real estate was appraised at $7,100.00. Mr. Lednum, on December 30, 1937, two weeks after his wife's death, entered into a written agreement with the appellee, prepared by Mr. Barnes, in which he agreed not to exercise his right to renounce his wife's will, and to pay all her unpaid debts. In consideration Mr. Barnes agreed to convey to Mr. Lednum life estates, remainder to Mr. Barnes, in four parcels of real estate in Worcester County; and by clauses 3a and 3b life estates, remainder to Mr. Barnes in two mortgages and mortgage notes owned by Mrs. Lednum at the time of her death. One mortgage and mortgage note was in the then amount of $6,000.00 made by the Wessells and the other mortgage and mortgage note was in the then amount of $10,000.00 made by the Callahans. The appellee agreed to assign these two mortgages and mortgage notes "with the full power to the said husband [Mr. Lednum], however, to sell or otherwise dispose of said note and mortgage and of any and all investments into which the principal of said note and mortgage may hereafter be invested during the lifetime of said husband, (the intention to exercise said power shall be evidenced by notice in writing to said nephew) and after the death of said husband, if said power had not been exercised by said husband as aforesaid, said note and mortgage or the investments into which the proceeds from said note and mortgage may hereafter be invested shall be the property of said nephew, absolutely." This agreement was not recorded until April 7, 1948, after Mr. Robert I. Lednum's death.

Mr. Barnes prepared deeds of the real estate and assignments of the two mortgages to Mr. Lednum, dated January 28, 1938, which were recorded. After reciting the agreement of December 30, 1937, and the consideration of the premises and the sum of one dollar, the

assignments were of estates for life in and to the two mortgages (and the notes thereby secured) "with the full power to said Robert I. Lednum, however, to sell or otherwise dispose of said mortgage during the lifetime of said Robert I. Lednum (the intention to exercise said power shall be evidenced by notice in writing to said Wilson K. Barnes)." In February, 1938, about a month after the assignments of the mortgages, Mr. Lednum consulted George H. Myers, Esq., a member of the Somerset County Bar. As a result of that consultation, Mr. Lednum called Mr. Barnes on the telephone objecting to the form of the assignments. On February 21, 1938, Mr. Barnes wrote a letter to Mr. Lednum explaining the agreement and assignments and reciting the previous negotiations between the parties, which letter contained the following: "The idea was that you intended me to have the principal sums of these mortgages at your death unless you needed these principal sums in your business or for your support and maintenance, and that you should have the full and complete power to use these principal sums during your lifetime. 1 agreed to this arrangement, and the agreement of December 30, 1937, and the two assignments of January 28, 1938, carry into effect this agreement. Although I do not personally see any ambiguity in the instruments which have been drawn, I am confident both Godfrey [Godfrey Child, Esq.] and Mr. Myers will agree that the above explanation of the agreement will be sufficient to clarify the matter." On February 23, 1938, Mr. Lednum wrote a letter to Mr. Barnes enclosing the two mortgages and notes with assignments prepared by Mr. Myers, and stating that Mr. Myers "thinks this was the best way to make these transfers. I will appreciate it very much if you will sign and return them to me." On February 25, 1938, Mr. Barnes wrote a letter to Mr. Lednum returning the assignments which he had executed. This letter also contained the following: "Confirming my telephone conversation with Mr. Myers and yourself on Wednesday, February 23rd, in regard to

the above mentioned assignments, I understand from Mr. Myers that the reason he had advised you to have an absolute assignment of these documents, rather than the form of assignment which was executed by me on January 28, 1938, is a practical one, namely, the fact that purchasers of mortgages would much prefer to have the record title absolutely in one person, rather than in one person with a life estate with a power of disposition with a remainder or reversion in another. Although I think that the assignments of January 28, 1938, fully protect your rights under our agreement of December 30, 1937, I can appreciate Mr. Myers' position in this matter, and I am perfectly willing and happy to execute the assignments which he has prepared. My understanding is that the execution of the assignments prepared by Mr. Myers in no way affects or prejudices the agreement of December 30, 1937, between you and myself, or any clause thereof. I also understand that the execution of these assignments is not to be construed to be an exercise by you of the power of disposition contained in clauses 3a and 3b of the agreement of December 30, 1937, but that the provisions of these clauses are effective as between you and myself, the execution of the assignments prepared by Mr. Myers being intended only to put you in a position where as between yourself and any purchaser you can freely dispose of the notes and mortgages."

The assignments follow. "For value Received, as Executor of the Estate of Ella Wilson Lednum and individually but without recourse to me or to said estate, I hereby assign to Robert I. Lednum of Worcester County, Maryland, his personal representatives and assigns, the within and aforegoing mortgage and the debt thereby secured. This absolute assignment is intended to transfer all my interest and all interest of said estate in and to said mortgage and supersedes deed of assignment executed by me on January twenty-eighth, nineteen hundred and thirty-eight and of record among the land records of Worcester County, Maryland, trans-

ferring to said Robert I. Lednum, a life estate in said mortgage with power of disposition, etc." Mr. Barnes, on the same date, February 25, 1938, wrote a letter to Mr. Myers, enclosing a copy of his letter of the same date to Mr. Lednum and said: "The letter sets forth my understanding of the situation in regard to the execution of these assignments. I send you a copy of this letter so that your files may be complete in this matter and show the situation in regard to the execution of these assignments." On April 5, 1938, Mr. Barnes wrote a letter to Mr. Lednum in which, among other things, he wrote: "In regard to our agreement of December 30, 1937, I feel that it was entirely fair and reasonable in every way, and is one which I am confident Aunt Ella would approve were she alive to give such approval. The agreement and settlement fully protects both of our interests and is therefore, entirely in line with what she would wish in the matter." To this letter Mr. Lednum replied by an undated letter written after the absolute assignments in which, among other things, he wrote the following: "Mary has just read me your letter. * * * I want you to understand that I am perfectly satisfied with our agreement and I am also sure that it would be satisfactory with Ella. Thinking that way about it was the reason for my agreeing to the arrangement. I note what you say in regard to my staying in this home and I also know that that is what Ella would want me to do for she told me so a great many times."

On June 6, 1938, the Wessell mortgage was foreclosed and the proceeds of $6,389.00 were deposited in Mr. Lednum's personal bank account and later used by him in connection with his tomato canning factory business. The Callahan mortgage was refinanced and a new mortgage in the amount of $13,000.00 was assigned by Mr. Lednum on March 11, 1939, to Mrs. Mary W. Lednum, one of the appellants here. This mortgage was paid off by check to Mrs. Mary W. Lednum on June 30, 1943, and the proceeds deposited in a bank account in the name of "R. I. Lednum or Mary W. Lednum". There

were subsequent deposits and withdrawals from this account and the chancellors found it impossible to further trace this fund.

In January, 1938, the appellants, Mr. Ralph C. Lednum and Mrs. Mary W. Lednum, came to live with their uncle, the aged and blind Mr. Robert I. Lednum. From that date, they or one of them attended to their uncle's business. Mrs. Lednum read his mail, wrote all of his business and personal correspondence, attended to his banking business, endorsed checks made payable to his order, drew checks in his name on his bank accounts, and made deposits in those accounts. Robert I. Lednum conveyed to the appellants his canning house and warehouse property and at least ten other parcels of real estate after the assignments of February 25, 1938.

The canning and warehouse property and certain machinery therein, the home of Robert I. Lednum, a house and lot, and a farm were conveyed to the appellants in May, 1939, after the Wessell mortgage was foreclosed. Eight parcels were conveyed to the appellants on July 16, 1943, after the Callahan mortgage had been paid. The bank account carried as "R. I. Lednum and/or Mary W. Lednum" passed to her as the surviving joint tenant at his death. Testimony was taken to show that the real estate conveyed to the appellants, exclusive of the canning factory and warehouse and machinery therein, was worth over $18,000.00. In 1941 and 1942 four hundred shares of the stock of the Continental Can Company were purchased in the name of Mary I. Lednum which were worth at the time of the hearing below over $18,000.00. The receipts for this stock were signed: "Robert I. Lednum by Mary W. Lednum". Mr. Lednum made large deposits and withdrawals in his lifetime and dealt in securities. There was, for instance, a withdrawal from the personal account of R. I. Lednum or R. I. Lednum and Mary W. Lednum on October 14, 1943, of $40,000.00 which was not deposited to R. I. Lednum and Company. It is evident that prior to these transfers to the appellant, Mr. Lednum was a man of

means. The chancellors found and the record indicates that there was nothing to justify the contention that it was necessary to use the $16,000.00 from the Wessell and Callahan mortgages for his support and maintenance. The record sustains the finding that if this money was used in his business, such use was not necessary.

Mr. Robert I. Lednum died on March 19, 1948, testate, leaving all of his property, except the sum of three hundred dollars a year to his brother William O. Lednum during his life, and a sum of two hundred and fifty dollars to a servant, to Ralph C. Lednum and Mary W. Lednum and appointing them executors of his estate, without bond. Although during his lifetime Robert I. Lednum was a man of means, at the time of his death, exclusive of the bank account held jointly with Mrs. Mary W. Lednum which passed to her at his death, he left nothing other than a one-third undivided interest, valued at $1,450.00 in motor vehicles in the name of R. I. Lednum and Company. It is evident that the appellants received during Mr. Lednum's lifetime practically all of his property, both real and personal.

The assignments of the mortgages here, of course, do not involve any question of the assignments to innocent purchasers for value without notice. Moreover, as Mrs. Mary Lednum wrote all the letters for Mr. Robert I. Lednum, she knew of the agreement with Mr. Barnes and the subsequent correspondence between them.

The appellants contend that on account of the absolute assignments of February 25, 1938, the contemporaneous letters of the same date from Mr. Barnes to Mr. Lednum and Mr. Myers, and the undated letter from Mr. Lednum to Mr. Barnes, were not admissible in evidence. The action in this case is based primarily on the contract between Mr. Lednum and Mr. Barnes of December 30, 1937. The assignments of February 25, 1938, do not purport to supersede, contradict, or vary the agreement of December 30, 1937, as in *Trotter v. Lewis*, 185 Md. 528, relied on by the appellants. These assignments specifically by words superseded the assignments of January 28,

1938, to effectuate the wish of Mr. Myers, as expressed in Mr. Lednum's letter of February 23, 1938, that: "He [Mr. Myers] thinks that this was the best way to make these transfers." It is, of course true, as expressed in Mr. Myers' telephone conversation with Mr. Barnes, that purchasers for value of mortgages would prefer the absolute assignments as prepared by Mr. Myers. The absolute assignments were specifically made for that purpose and were not in any way to supersede the agreement between Messrs. Lednum and Barnes. The contract between the parties here consisted not only of the agreement of December 30, 1937, but also of the letters of February 25, 1938, from Mr. Barnes to Messrs. Lednum and Myers which reaffirmed the agreement and Mr. Lednum's undated letter. These letters are not inconsistent with the agreement. Where a contract consists of several documents they are all admissible in evidence to show the actual agreement between the parties. *Restatement Of The Law, Contracts,* Section 235(c). *Noel Co. v. Atlas Cement Co.,* 103 Md. 209; *Duplex Envelope Co. v. Baltimore Post Co.,* 163 Md. 596, 605, 606; *Gaybis v. Palm,* 201 Md. 78; *Ray v. William G. Eurice & Bros.,* 201 Md. 115; *Rossi v. Douglas,* 203 Md. 190, 198. Mr. Lednum retained the absolute assignments under the conditions specified in the letter from Mr. Barnes enclosing them. Mr. Lednum by his undated letter, written after the absolute assignments, reaffirmed the agreement of December 30, 1937.

Furthermore, it has been held that a deed absolute on its face may be treated in equity as a mortgage *between the original parties* and against all persons deriving title from the grantee who are not *bona fide* purchasers for value, without notice, if it is shown to have been intended merely as security for an existing debt or a contemporaneous loan. Equity looks beyond the mere form of the instrument to discover the intention of the parties as to the real character of the transaction. *Hinkley v. Wheelwright,* 29 Md. 341, 348; *Funk v. Harshman,* 110 Md. 127; *Obrecht v. Friese,* 148 Md. 484; *Oxenham*

*v. Mitchell*, 160 Md. 269, 275; *Coster v. Arrow Building & Loan Ass'n.*, 184 Md. 343; *Thomas v. Klemm*, 185 Md. 136, 139; *Levin v. Cook*, 186 Md. 535. For other cases where equity courts have looked behind the mere form of the writing to find the real agreement between the parties see *Harwood v. Jones*, 10 G. & J. 404; *Southern Advertising Co. v. Metropole Co.*, 91 Md. 61; *Leonard v. Union Trust Co.*, 140 Md. 192. If the agreement of December 30, 1937, had provided for absolute assignments of the mortgages and had further provided that, if Mr. Lednum failed to dispose of the mortgages, the remainder would pass to Mr. Barnes, such absolute assignments would not have defeated the interests of Mr. Barnes.

The chancellors found that beginning in 1939 and until his death, Mr. Robert I. Lednum gave substantially all of his property to the appellants including the canning house, the machinery and equipment therein. He assigned the Callahan mortgage to Mrs. Mary W. Lednum apparently without any consideration. It is true that the money from this mortgage was placed in a joint account. However, Mrs. Mary W. Lednum was the eventual recipient of that account. It is evident that the money from the Wessell mortgage was not necessary for the support and maintenance of Mr. Robert I. Lednum. There is no evidence that the receipts from either of the mortgages was consumed in the business of the deceased. If this money was used in the business the appellants were the recipients of that business.

There seems no doubt in this case that a confidential relationship existed between the deceased and the appellants. There is no doubt that great confidence was reposed by the deceased in them. He was blind and, as stated in *Barnes v. Lednum, supra*: "For ten years defendants [appellants here] were Mr. Lednum's eyes and hands." Under such circumstances the burden was upon the appellants to prove to the satisfaction of the chancellors that the conveyances were the free and voluntary act of the donor and made by him with full

knowledge as to the effect and operation of such conveyances. *Zimmerman v. Bitner*, 79 Md. 115; *Horner v. Bell*, 102 Md. 435; *Upman v. Thomey*, 145 Md. 347; *Gaver v. Gaver*, 176 Md. 171; *Gaggers v. Gibson*, 180 Md. 609; *Grimes v. Grimes*, 184 Md. 59; *Koppal v. Soules*, 189 Md. 346; *Bass v. Smith*, 189 Md. 461; *Henkel v. Alexander*, 198 Md. 311. In other words the burden was upon the appellants to prove that the deceased during his lifetime intended to exercise the power set out in the agreement of December 30, 1937, hereinbefore quoted.

The appellants have not shown in this case the intent on the part of Mr. Robert I. Lednum to exercise the aforesaid power. They contend that the testimony of Mr. Barnes, that he had never received notice from the deceased of his intention to dispose of the mortgages or the proceeds thereof, was inadmissible in evidence on account of the provisions of Code, 1951, Art. 35, Sec. 3, forbidding testimony by a party to a transaction with the deceased. However, it is not necessary that we pass upon this point. Assuming that it was inadmissible, which we do not here decide, the burden was upon the appellants to prove such notice to Mr. Barnes, which they did not prove. Where property is given to one expressly for life with power of disposition of the reversion and the person fails to execute such power, the estate of such person is limited by the express words, and what remains passes to the reversioner. *Mills v. Bailey*, 88 Md. 320; *Smith v. Hardesty*, 88 Md. 387; *Reeside v. Annex Bldg. Ass'n.*, 165 Md. 200. The words "dispose of" did not give Mr. Robert I. Lednum the unlimited power to do anything he desired with the mortgages. He could only "dispose of" the mortgages under the express conditions of the power. It was said in *Hutchinson v. Farmer*, 190 Md. 411, at page 417: "When the method of the execution of the power is set out in the instrument creating it, that method of execution must be used, and another will not suffice. *Miller on Construction of Wills*, paragraph 250; *Tiffany on Real*

*Property*, 3d Ed., Vol. 3, Sec. 398; *Venable's Syllabus*, page 167. Thus, if the instrument creating the power requires that it be executed by deed, it cannot be executed by will. The converse is also true. *Pope v. Safe Deposit & Trust Co.*, 163 Md. 239, at page 245, 161 A. 404; *O'Hara v. O'Hara*, 185 Md. 321, 44 A 2d 813, 163 A. L. R. 1444; *Connor v. O'Hara*, 188 Md. 527, 53 A. 2d 33. See also *Farmers' Loan and Trust Co.. v. Mortimer*, (opinion by Judge Cardozo) 219 N. Y. 290, 114 N. E. 389, Ann. Cas. 1918E, 1159." See also *Tyson v. Latrobe*, 42 Md. 325; *Foos v. Scarf*, 55 Md. 301; *Smith v. Hardesty, supra*. We are of opinion that the chancellors were correct in awarding the $16,000.00 to the appellee.

Mr. Wilson K. Barnes, herein designated as the appellee, cross appealed from that part of the decree which allowed him interest only from the date of the decree. We are of the opinion that the appellee was entitled to the $16,000.00 immediately upon the death of Mr. Lednum. Demand was made by the appellee upon the appellants for this money. The litigation has been long and protracted. Counsel for the appellee stated at the argument in this Court that he would be satisfied with simple rather than compound interest from the date of the death of Mr. Lednum. We will therefore not consider the question of compound interest as in *Brown v. Tydings*, 149 Md. 22. We are of opinion that the appellee should be awarded, in addition to the sum of $16,000.00, interest thereon from March 19, 1948, which was the date of Mr. Lednum's death.

> *Decree affirmed in part and reversed in part and cause remanded for the passage of a decree to conform with this opinion. Costs to be paid by the appellants.*