WILLIAM HEYSER WISE, and others *vs.* S. MARSHALL
SWARTZWELDER, and others.

*Mental capacity of Grantor consistent with Physical infirmity—*
*The taking of the Acknowledgment to a Deed, presumption*
*that the Magistrate believed the Grantor to be mentally com-*
*petent—Undue influence—Presumption in favor of a Deed*
*expressing the intention of the parties.*

Great physical suffering oftentimes shatters and destroys the mind,
but it does not necessarily produce such result. The law recog-
nizes the fact that the mind may be competent, though the body
is aged and stricken by disease and suffering.

The presumption cannot be avoided that the magistrate (since de-
ceased,) who took the acknowledgment of the deed, would not have
taken the acknowledgment of a party whom he believed to be
mentally incompetent to execute and acknowledge it.

The devotion and affection of a grantor for her brother (the grantee,)
and the belief of witnesses that she would do anything he asked
of her, is not of itself sufficient ground for declaring that the deed
has been obtained by undue influence.

Where a deed is executed when the grantor is competent to do so, it
carries with it the presumption that it contains what the parties
intended. It will only be reformed upon clear proof that it does
not contain what the parties intended at the time of its execution.

APPEAL from the Circuit Court for Washington County,
in Equity.

The case is sufficiently stated in the opinion of the
Court.

The cause was argued before BARTOL, C. J., BRENT,
MILLER and ROBINSON, J.

Wise, *et al. vs.* Swartzwelder, *et al.*

*George W. Smith* and *William H. Tuck,* for the appellants.

*Lewis E. McComas, Lewis C. Smith* and *Tryon Hughes Edwards,* for the appellees.

BRENT, J., delivered the opinion of the Court.

The appellants filed the bill in this case for the purpose of setting aside a deed from Margaret Wise to Peter Swartzwelder, dated the sixteenth of January, 1875, by which she conveyed to him a house and lot, in the City of Hagerstown.

By agreement a decree *pro forma,* dismissing the bill, was passed by the Circuit Court for Washington County, and from that decree this appeal is taken.

It is apparent from the record, that, although the value of the property involved is not large, the case has been productive of much feeling. The testimony is unusually voluminous, and so conflicting that the learned Judges who heard the case below, reached different conclusions.

We are not disposed to review the testimony at length. To do so would very greatly extend this opinion; and in contrasting the testimony of the witnesses, it would be almost impossible to avoid remarks upon it, which might be construed into reflections upon witnesses who may have testified in perfect good faith. It is also wholly needless, as the conclusions only which we have deduced from the whole proof, are to govern the decree to be passed.

We think upon the entire case as developed, that the burden of proof is on the complainants. No such confidential relations are found to exist between the parties to the deed as to throw that burden upon the defendants, who are the heirs-at-law of the grantee. Keeping this rule in view, we have not thought that the case is one of unusual difficulty.

In 1846 Mrs. Wise lost her husband. The only real estate, which he possessed, was this house and lot, which had been the home of himself and family. Dying insolvent, upon a creditors' bill the house and lot were decreed to be sold. At the sale, which was in 1851, Peter Swartzwelder, a bachelor brother of the widow, became the purchaser of the property for fourteen hundred and thirty dollars, and subsequently for the consideration of love and affection he made a conveyance of it to the sister, Mrs. Wise. Some time afterwards the house was enlarged and remodeled, and for this Peter Swartzwelder paid an additional sum of four thousand dollars.

That this house and lot were regarded by the brother as the absolute property of the sister is unquestioned from the proof. It was evidently his purpose to furnish her with a house and home, of which she could not be deprived. She lived there as owner, and he boarded with her. The warmest and kindest affection existed between them, and thus they lived in the utmost harmony until the sister died, on the 16th of February, 1875.

Mrs. Wise had no income, except what she received for the board of the brother, and from the rent of a room, as a lawyer's office, after the house had been enlarged. Other means, when required for her own comfort or the support of the house, it is fairly to be inferred, were furnished by him. Her children were not with her. Her daughter had married, and the two sons seem to have been wanderers, only occasionally communicating with her, or returning to her home when they needed money, and this was generally given them from her slender means, or by the brother.

In 1874 the health of Mrs. Wise became seriously impaired, and in the fall of that year she became hopelessly sick with dropsy complicated with disease of the heart. From about Christmas of that year to the time of her death, on the 16th of February, following, her sufferings are described by all the witnesses as being of the

most severe and intense character. One month before her death the deed in question was executed, and it is charged that at the time she was mentally incapable of making a deed.

Great physical suffering oftentimes shatters and destroys the mind, but it does not necessarily produce such result. The law recognizes the fact that the mind may be competent, though the body is aged, and stricken by disease and suffering.

There is no doubt that about the time when this deed was executed, the mind of Mrs. Wise often wandered, that she sometimes fancied she saw visions which did not exist, that she failed at times to recognize persons whom she had known, and that she talked incoherently in her broken sleep or when awaking from it. But all these must have been temporary, whether resulting from opiates administered to allay pain or not, for witnesses, who are quite as competent to judge as those who testify to these hallucinations and wanderings, testify with equal credibility to her competency and unimpaired mind when they saw and conversed with her. Notably among these are two reverend gentlemen who called upon her for spiritual purposes. They, no doubt, from their profession, were familiar with sufferings of the sick bed, and it was their aim to teach patience and reliance, and to soothe pain by addressing their efforts to the mind of the sufferer. If the latter be impaired and gone, who more likely to discover it? They think from their conversations with Mrs. Wise, that she was competent to make a deed.

But there are facts testified to by one of the witnesses as occurring near about the time of the signing of this deed, which, with the other proof on the part of the defendants, we think. is conclusive upon the question of competency. There is no escape from their truth without assuming that the witness has wilfully misstated. Unlike opinions upon the condition of the mind, they cannot be treated as errors of judgment.

It is stated by this witness that on the day before the deed was executed, Mrs. Wise spoke to her about deeding the property to her brother, and said she had made up her mind to do so. She saw her again on the day, and before, the deed was signed, and conversed with her. She was "perfectly clear-minded, calm, and free from pain." The witness left to attend to duties about the house, and saw the brother (Peter) with Mr. Tice, the magistrate, go into her room. About an hour afterwards she returned to the room, when Mrs. Wise told her "she had signed the deed giving the property to Peter, as she had told her the day before she was going to do." This witness further says, "from these conversations, before and after the signing of the deed, I know that her mind, at the time of signing the deed, was as clear as mine this moment."

After carefully weighing and considering all the proof and circumstances of this case, we cannot reach the conclusion that Mrs. Wise was mentally incompetent at the time she executed this deed. On the contrary, notwithstanding her advanced age and her bodily sufferings from a fatal sickness, we think the weight of the testimony shows that her mind survived, and that she knew and understood what she was doing.

It is to be regretted that the magistrate who took the acknowledgment is not living. But the presumption cannot be avoided, that he would not have taken the acknowledgment of a party to a deed, whom he believed to be mentally incompetent to execute and acknowledge it.

The question of undue influence rests entirely upon the devotion and affection of Mrs. Wise to her brother, and the belief of the witnesses that she would do anything he asked of her. This of itself is not sufficient ground for declaring that a deed has been obtained by undue influence. Perhaps, connected with the fact that a mother had taken her property without cause or apparent reason from her children, Courts of equity might hold the deed to be invalid. But the circumstances of this case take away the

force of that argument. This property had been bought and paid for by the brother. Her daughter had married, and died in 1868. Her grand-children had the care of a father to provide for them. Her sons were unfortunate, and it is apparent that she believed if the property passed to them it would soon be wasted and squandered. The brother was kind and affectionate, and she believed that the property in his hands would be safe, and that he would take care of the improvident sons. How far he did so after her death, and during his life, does not appear. In one year after the death of his sister, he died, and without leaving a will. The portion of his property, inherited by these sons, seems to have passed into other hands.

In the absence of more conclusive proof, we cannot suppose that a brother, who had been so careful of the welfare of his sister, could have so suddenly changed his nature as to have unduly influenced her, upon her dying bed, to execute to him a deed *against her wishes, and conviction of what was right.*

There is proof that at several times Mrs. Wise said, "Peter was to have this property for his life, and afterwards it was to go to the children."

Having executed the deed when she was competent to do so, it carries with it the presumption that it contains what the parties intended. It will only be reformed upon clear proof that it does not contain what the parties intended at the time of its execution. Such proof has not been given in this case.

We do not think that the complainants have successfully established any of the grounds relied upon to set aside this deed. We cannot, from all the facts and circumstances in the case, deduce either mental incapacity, fraud, misrepresentations, or undue influence. The deed must, therefore, stand, and the decree dismissing the bill will be affirmed.

*Decree affirmed.*

(Decided 30th June, 1880.)