## CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed November 29, 1913.

TIMOTHY EDGAR HENRY, BY HIS FATHER AND NEXT FRIEND, JAMES D. HENRY,

VS.

ELLA LEECH AND MICHAEL LEECH.

*Charles Pielert* and *Daniel S. Sullivan* for complainant.

*Armstrong Thomas* and *J. Purdon Wright* for defendants.

BOND, J.—

John Welsh, a farmer, about 82 years of age at the time of the events of which this controversy has arisen, and in poor health, had for some years previous to November, 1912, lived a retired, solitary life in Baltimore county. He had a married daughter, Mrs. Leech, and a grandson, Timothy Edgar Henry, by a deceased daughter; but he had little communication with them —had had no communication at all with them for a long period of time. He had an estate of over $3,000, all of it in money in a savings bank account. By living alone, most parsimoniously, almost in squalor, if some of his neighbors are to be believed, he managed to live on without labor. He was eccentric. But whether his strange acts were instances of general mental infirmities is a subject of dispute between the witnesses.

In November, 1912, he entered St. Joseph's Hospital in Baltimore, and remained there for a month under treatment. He was suffering from nephritis and heart trouble, and from time to time had sharp "sinking spells," as the witnesses described them, which lasted two or three days at a time. On November 25, 1912, he went from the hospital to the house of his daughter, Mrs. Leech, and asked her if she would take him in and give him a home for the rest of his days. She had not known of his being in the hospital. Having her consent he returned to the hospital, and, after having remained there two days longer, came on November 27 to the daughter's house. On that night he had such an attack of illness that he was thought to be dying; and about midnight a priest was called and the last rites of the church were administered to him. He did not die then, however; was in better condition on the next day; and lived on, indeed, until the following April.

On the morning of November 29, the daughter's husband procured from the savings bank a blank form of order for payment of the fund, filled it out for payment to his wife, obtained the old man's signature, properly witnessed, and had the fund transferred accordingly. It was shortly invested in the redemption of the ground rent upon the defendants' dwelling, owned by them. On December 7 a confirmatory statement, designed to fortify this

transfer against attack by other relatives, was prepared by attorneys and signed and acknowledged by Welsh, before disinterested witnesses who satisfied themselves as to his full understanding and his wish in the matter.

And now, the old man being dead, his infant grandson applies to have the transfer of money to the daughter declared void, to have the court assume jurisdiction of the fund, and for an accounting of its use, all on the ground that the old man had not the mental capacity to make a valid transfer or gift, and that it was procured by the exercise of fraud and undue influence. No letters of administration have been taken out by the estate of the decedent. His daughter is the person entitled to appointment as administratrix, and she denies that there is any estate. No question has been raised as to the right of the grandson to bring this proceeding; and the case has been contested fully on the question of the validity of the gift.

I do not think the testimony proves that the man, acting independently at least, was mentally incapable of making a valid deed or contract. That he was eccentric was admitted by all the witnesses; and that no rational explanation can be given for some of his acts seems also to be clear. But during most of the time his actions and his conversation seem to have been rational, and not remarkable. More than is shown here is needed to enable a court to adjudge a donor mentally incapable of comprehending the nature and effect of his gift.

In considering the effect of the testimony on the averment of fraud or undue influence in the procurement of the gift it is necessary to determine first of all the character of the relation between the parties to the gift when it was made. It is settled law that if the beneficiary in such a transaction, a gift inter vivos, occupies a confidential relation to the donor, then the gift will be held void, unless the court shall be satisfied that it was the voluntary act of the donor and was not procured by undue influence exercised over him by the donee, the burden of this proof being cast upon the donee. And the plaintiff urges that the relationship of parent and child has always been treated as a confidential one within the meaning of this rule, and, as I understand the argument,

concludes that by reason of that relationship alone the court should set aside the gift in this case unless it is clearly shown to have been proper. But I am afraid that argument does not state the whole problem of the case.

There are relationships which by their nature involve the element of confidence and trust by one person in another; and in dealing with these no direct testimony of the existence of that element is needed. The court may begin at once by requiring explanation and justification of any gift to the trusted person. Outside of these relationships, in all those which do not by their nature involve trust and confidence, the court has no ground for assuming it, and can find it only upon proof. The relation of parent and child is one of the most familiar of those of the first class, by their nature confidential. But the trust assumed to exist is that by a child in its parent; and gifts to the trusted parent are those which are subjected to the unfavorable presumption. It is only by reversal of the natural order that a parent comes under the dominion of a child; and the court cannot begin by assuming that. It must be proved, if it is a fact.

Highberger vs. Stiffler, 21 Md. 338.

Zimmerman vs. Bitner, 79 Md. 115.

Where the elment of confidence must be proved it need not always be shown by evidence of some actual exhibition of it. The situation of the parties and surrounding circumstances may sometimes inferentially show the donor to be under the dominion of the donee as clearly as would direct evidence of such dominion.

Here there is no direct evidence of a confidential relationship. And the circumstances rather disprove the existence of it. The parties had had no intercourse at all for a long time previous to the gift, and until two days before it. Indeed, in respect to the old man's small business affairs, in respect to any of his interests, there was not, as far as the evidence shows, any relation at all outside of this particular transaction. And this transaction, therefore, however much it may have resulted from overreaching, cannot be said to have taken place between persons who stood in a confidential relation. The court cannot, I think, begin its inquiry by saying to

the defendants that there was a stewardship, and that this fact requires an accounting.

Wise vs. Swartzfelder, 54 Md. 292.

The plaintiff must, therefore, sustain the burden of proof of the charge of undue influence in the procurement of the gift.

Direct evidence of the undue influence is not required. Naturally a covert action, it can in many cases be proved only by circumstantial evidence.

The circumstances here give rise to strong suspicions of undue influence and the lack of free voluntary action on the part of the donor. And the question of the effect of the proof seems to me a close one. But I have concluded that the evidence does not prove undue influence, and does not enable the court to set the gift aside.

We have on the one hand these suspicious facts: The donor was old, enfeebled in health, and to some extent in mind. He lived his life quite apart from his daughter. By habit he was careful of his money; careful and saving almost to excess. He had said that he had a daughter and a grandson to take the money after his life. He came to his daughter's house sick almost to death; and almost immediately after he rallied from death's door, it appears, he made a gift of all his money to his daughter and her husband. The daughter and son-in-law were the only persons with him at the time. And there would appear to have been almost precipitate hurry in completing the transaction. The grandson was deprived of all share in the money. And the old man had made himself penniless and entirely a dependent for such time as he might live. These facts viewed apart create suspicion, certainly.

In addition, the testimony of the defendants gives explanations which are conflicting and strange; and that strengthens the suspicion. Their testimony is that the donor gave the money in consideration of their promise to keep the old man for the remainder of his days. But no such stipulation was written down, or mentioned in the later written statement of the transaction; and to the inquiries of the witnesses the old man said only that his daughter had been a good daughter, and the like. That the old man

should voluntarily have urged this gift also volunteered the suggestion that the ground rent be bought by the defendants, and also suggested the employment of the lawyer to have a confirmatory statement prepared, might indicate rather a sudden and strange solicitude on his part. Again, the daughter, Mrs. Leech, testified circumstantially to her going to the savings bank for the blank order, filling it in, and completing the transaction; and on the next day of trial testified that her husband, not she, had done all these things. And I was otherwise impressed with the belief that she was making evidence to fit what she conceived to be the needs of the case.

It is true that thoroughly credible witnesses satisfied themselves, at the time of the confirmatory statement, that the old man was of sound mind, and understood and intended the transaction as it was carried through. But, as has often been said, that fact may still leave open the question how that intention was brought about.

But we have so far omitted one consideration in the light of which the case takes on a different aspect. It seems probable that this old man had come to his daughter's house to die, believing himself near the end, as he was. And so, it is not unlikely that at the time of this gift he was disposed to deal with his money as something with which he had no further concern. The last rites of his church had just been administered to him. And he seems to have considered death as imminent. In his extremity his only surviving child had taken him in. And it is conceivable that out of gratitude, with a renewed attachment to the daughter, he may have wished freely to transfer the money to her. It is not unlikely that he may even have been anxious to close his affairs in this way. The hurry in completing the transaction might well be explained by fear of another sinking spell such as he had just passed through.

As to the exclusion of the grandson —the grandfather had had little communication, and no intimacy, with him. While the fact of such an exclusion, especially contrary to a previously expressed intention, is always important, it is not conclusive on the question of the donor's freedom of action. Donors and testators frequently do make such exclusions, of entire free will.

And it seems to me not unlikely that the conflicts and contradictions as in the daughter's testimony may have come from excessive zeal as a witness rather than from consciousness of wrongdoing in procuring the gift.

And, after all, the testimony in connection with the confirmatory statement is persuasive. This man about whose action we are conjecturing was actually seen later and questioned on the point in dispute by credible witnesses, some of them entirely disinterested. And the court has their testimony that the old man was clear in his mind and fully intended what he had done. It is true their questions to him, as they now state them, were not as searching as they might have been made, but these witnesses seem to be satisfied on the point now in controversy.

This gift may have been unwise, carelessly made, and unfair in our view. It may have resulted from an impulse which a more vigorous, or a more thoughtful, man would have resisted. And, too, the defendants may have been greedy in taking advantage of the old man's impulse. All these things may be true; and yet the gift may have been made with a free will, and, so, beyond the business of a court. The evidence, as I say, seems to me insufficient to sustain the burden of proving that the gift was not made with such a free will, and I conclude therefore that the gift cannot be held void.

A decree dismissing the bill will be signed accordingly.