JOSEPH ALBERT TAYLOR, Administrator, v. MARY HEWING PIVEC et al.

*Gift to Daughter—Undue Influence Not Presumed—Confidential Relations.*

That a woman sixty-six years old, with unimpaired faculties and unweakened will, who attended to her affairs until her death, seven years later, and who had a husband to advise with, gave most of her property into the joint ownership of herself and her unmarried daughter, the survivor to have all, in preference to dividing it equally among her children, and that the daughter and an aunt, with whom the daughter divided the property after the mother's death, lived in close proximity with the mother, did not justify equity in setting aside the gift by the mother.                                    pp. 528-531

The trust assumed as between parent and child is that of a child in the parent, and the court does not, in the case of a gift by a parent to a child, assume undue influence over the parent by the child.                                                    p. 531

Confidential relationship between a mother and daughter, involving a presumption of undue influence by the daughter in the procurement of a gift from the mother, is not shown by the fact that they lived in close intimacy and harmony.          p. 531

The independent advice of a third person is not requisite to the validity of all gifts, even of all gifts to donees in a confidential relation.                                              p. 532

Such advice is not necessary to the validity of a gift, when the donee is not in a position of influence over the donor, and the donor is not in an unequal or dependent position, but is apparently capable and acting of her own free will.        p. 532

That one gave most of her property to one of her three children does not alone prove that the gift was procured by undue influence.                                                       p. 532

*Decided January 12th, 1926.*

Appeal from the Circuit Court of Baltimore City (SOL-TER, J.).

Bill by Joseph Albert Taylor, administrator of the estate of Isabel DeL. Hewing, deceased, against Mary Hewing Pivec and others. From a decree dismissing the bill, the plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, DIGGES, PARKE, and WALSH, JJ.

*William H. Lawrence* and *Joseph W. Starlings,* for the appellant.

*Daniel R. Randall,* for Mary Hewing Pivec and Adelaide L. Nones, appellees.

*Frank J. Hoen* and *George Weems Williams,* submitting on brief, for the Savings Bank of Baltimore, appellee.

Bond, C. J., delivered the opinion of the Court.

In this proceeding the appellant has sought to set aside a transfer of a savings bank deposit made by his decedent seven years before her death, to herself in trust for herself and her daughter as joint owners, the survivor to become absolute owner. At the time of the transfer the amount on deposit was $4,885.63, and this was increased by subsequent deposits by the mother and by the daughter, so that at the time of the mother's death the amount was $9,434.29. With the exception of some real estate and some furniture and personal effects, valued altogether at about $2,000, the mother had no other property. The daughter, Mary J. Hewing, since married, and now named Mary Hewing Pivec, drew the money after her mother's death, retained some of it, and re-deposited the remainder, together with an amount from a separate account of her own, on a like trust for herself and Miss Adelaide I. Nones, the mother's sister. These present joint owners are the defendants and appellees. The trial court, after having heard evidence on the allegations, found against the administrator, and dismissed his bill of complaint. He appeals from the decree.

The bill charges that, in making the transfer, the decedent did not intend to make a gift to her daughter of any interest in the money, but only to make the daughter an agent for the mother's convenience in drawing the money when age might incapacitate the mother herself. And it charges, further, that the mother did not have the benefit of competent and disinterested advice before having the entry of the transfer made, and that she was unduly persuaded and influence in having it made by the daughter and Miss Nones. Upon the trial there was no evidence offered to show an intention to make the daughter a mere agent for the mother, as averred, and the complainant's case was rested entirely upon the charge that the transfer was made by the mother without independent advice, and was procured by undue influence exercised upon the decedent. Support for the charge was sought by the complainant almost entirely in a

supposed presumption against the transfer because of the relationship of the parties, and a supposed burden upon the appellees of disproving procurement by undue influence, and of showing that the mother had the protection of independent advice.

In 1917, when the transfer was made, the mother, her husband, the daughter and Miss Nones lived together in a house owned by Miss Nones, in Baltimore City, as they had lived for more than thirty years. There were two sons, and they had formerly lived there, but upon their marriages, or shortly after, had moved to homes of their own. The father was a carpenter, or contractor, and a capable, active man up to about the year 1920. He died in 1922. The aunt, Miss Nones, was a school teacher until her retirement on a small pension in 1922. The members of the household are pictured in the evidence as having lived in such intimacy and harmony as should exist in close family life. There was testimony that Miss Nones was the strong mind of the household, and exercised her judgment on all things, including the actions of the other members of the household. There is also some denial of this. None of the evidence, however, goes anywhere near showing dependence of the mother on the judgment of Miss Nones or of any one else, or that either of the appellees might have been able, if disposed, to make the mother act otherwise than as her own will might direct.

The mother was a woman about sixty-six years old in 1917, when she had the account transferred. One of the sons testified that she was "breaking up" during the last ten years of her life, but did not go so far as to say that she was incapacitated for dealing with such matters as this. Indeed, we understand both sons to agree with other witnesses in the case that the mother was capable of taking care of her own affairs, and did take care of them, until the day of her death. The complainant had no evidence to offer on the actual transfer, none to show, directly, any persuasion or any interference by the appellees, or by any one else. The daughter testified that the mother and father had consulted

on the plan, and had agreed that the transfer of the account
should be made, and that the mother explained that the
sons, being prosperous, would not need any of the money,
and that if the mother should die before the father, the
daughter would take care of him.   She said that officials at
the bank explained to the mother the purpose and effect of
the entry adopted; and bank officials testified at the trial that
it was the regular practice at the bank to make that explana-
tion.   The aunt, Miss Nones, testified that she did not know
of the original transfer until after it had been made.   Decla-
rations of the mother before or after the transfer were testi-
fied to.   The two sons testified to remarks by her tending
to show an intention that at least one of the sons should have
a share of the money.   And friends and neighbors of the
mother testified to declarations that the daughter was to
receive it all.   The older son testified that whenever he talked
to his mother on his visits to her, or whenever he took her
out riding, during the years since he left the home, one or
both of the appellees would be present; but he did not say, or
even intimate, that this was by reason of any arrangement by
the appellees, or that there was anything unnatural in it.

Much emphasis is laid on the fact, admitted by the daugh-
ter, that when the brothers came to the house after the
mother's death, asking about assets of the estate, she, the
daughter, denied that the mother had any money or had
any bank book.   This concealment, the daughter testified,
was due to a feeling on her part that the brothers, especially
the older one, who had not been on good terms with the sister
for two years or more, had no right to the knowledge.   She
gave all the facts to the attorneys next day.   The incident
seems hardly to throw any light on the transfer of the ac-
count seven years before.

The case appears to be, then, that a woman sixty-six years
of age, not impaired in her faculties, or weakened in will, and
who actually did attend to her affairs up until her death
seven years later, and who had her husband to consult and
advise with her, gave all her money, constituting the larger

part of all her property, into the joint ownership of herself and her unmarried daughter, the survivor to own all, and continued it so during the remainder of her life, in preference to arranging for an equal division among her children; and that the daughter, and also the aunt, who now profits by the daughter's gift, lived in close intimacy with the mother.

We find no ground in that case for interference by a court of equity.

In the first place, we disagree with the contention that because of the relationship of the parties there is a presumption against the gift, and a burden upon the appellees of disproving procurement of it by undue influence. As has been said, there is no affirmative proof here of dependence of the mother upon the judgment and guidance of anyone else, or that either of the appellees might have been able to impose her will on the mother. There is no affirmative proof of an actual confidential relation within the meaning of the principle invoked by the appellant as imposing such a burden of disproof on the appellees. It is true, of course, that there is a natural element of trust and confidence in the relationship of parent and child, which is so easily abused that the courts require freedom from abuse of it to be shown by a donee, but as has often been pointed out, the trust assumed is that by a child in its parent, and gifts to the trusted parent are those which are subjected to the unfavorable presumption. It is only by a reversal of the natural order that a parent comes under the dominion or influence of a child, and the Court cannot, therefore, begin by assuming it to be so. It must be proved if it is a fact. *Henry v. Leech,* 123 Md. 436, 441; *Highberger v. Stiffler,* 21 Md. 338; *Zimmerman v. Bitner,* 79 Md. 115. And here there is no proof of it. The daughter and her aunt are shown merely to have lived in close intimacy and harmony with the donor, and a confidential relationship, upon which dependence of the donor may be assumed, cannot be made of that mere

intimacy and harmony. There must be something more, and it has not been shown to exist in this case.

The appellant argues that donees are regularly required, in order to sustain a gift of so large a portion of the donor's property, to show that the donor had the protection of the independent advice of a third person. We do not agree that such independent advice is requisite to the validity of all gifts, even of all gifts to donees in a confidential relation. In *Zimmerman v. Frushour,* 108 Md. 115, 126, in an opinion by Judge Pearce, this Court definitely rejected a contention for such a general requirement. And in this case, where it does not appear that the donee, or the donees, were in a position of influence over the donor, where there is nothing to show that the donor was in an unequal or dependent position, but was, for all that appears, capable, and acting of her own free will, the advice of a third person was not necessary to the validity of her gift. And if it were, we should still have to consider the evidence that her husband advised and consulted with her.

The burden of proving undue influence vitiating the gift is therefore upon the complainant. And he has presented no adequate proof of it. A gift of so large a portion of a donor's property to only one of three children is such a preference as would be the natural object and result of undue influence, but it would not alone prove actual procurement by undue influence, because it might also result naturally from the free will and choice of the donor. There are no other facts sufficient to prove it, and we, therefore, agree with the conclusion of the trial court.

*Decree affirmed, the appellant to pay all costs.*