(Decided 14th March, 1894.)

---

## James Monroe Zimmerman *vs.* Catharine Bitner, and others.

*Deed of Gift—Confidential relations—Undue influence—Burden of Proof.*

An old and illiterate man, unable to read or write, made a deed of gift of a valuable farm, which, with the exception of a few hundred dollars, constituted his entire property, to the husband of a niece, with whom he had lived for some years, and who was his trusted and confidential adviser, and upon whom he

relied for advice and counsel in all matters concerning his affairs. The donor had a sister, between whom and himself the most affectionate relations existed, and a number of nephews and nieces. In a suit by the heirs at law of the donor to have the deed set aside as procured by the importunities and undue influence of the donee and his wife, it was HELD:

1st. That the burden was on the donee to prove that the deed of gift was the voluntary and deliberate act of the donor; that he knew at the time he signed it, he was divesting himself of all interest in the property, and was transferring it to the donee.

2nd. That the deed could not be sustained in the absence of proof that it was ever read to the donor, or that any explanation was made to him as to its effect and operation, or that he understood its import and meaning; and neither the donee, his wife, nor the draughtsman of the deed, being called upon to testify.

APPEAL from the Circuit Court for Washington County, in Equity.

This appeal was taken from a decree of the Court below (BOYD, J.), setting aside and declaring null and void a deed made to the appellant. The case is stated in the opinion of this Court.

The cause was argued before ROBINSON, C. J, BRYAN, PAGE, ROBERTS, MCSHERRY and BRISCOE, J.

*George W. Smith, Jr.,* and *Alexander Neill,* for the appellant.

Unless the Court finds something in this case to warrant the belief that confidential relations existed between the grantor and grantee, it must be controlled by the principle laid down in *Forrest vs. Frazier,* 2 *Md. Ch.,* 147: " A deed cannot be overthrown unless it can be shown that it was executed under the influence of fraud, accident

or mistake." Assuming then that the confidential relation does not exist, the burden of proof is upon the plaintiff to establish fraud, accident, or mistake, or undue influence.

Did the relation of confidence exist between the donor and donee? The language of the Court in *Cowee vs. Cornell et al.*, 75 *N. Y.*, 100 and 101, is as follows: "The doctrine of confidential relation is well settled, but there is often great difficulty in applying it to particular cases. The law presumes in the case of guardian and ward, trustee and *cestui que trust*, attorney and client, and perhaps physician and patient, from the relation of the parties itself that their situation is unequal, and that relation appearing itself throws the burden upon the trustee, guardian or attorney, of showing the fairness of his dealings; but while the doctrine is without doubt to be extended to many other relations of trust and confidence or inequality, the trust and confidence, or the superiority on one side, and weakness on the other, must be proved in each of these cases. The law does not presume them from the fact, for instance, that one party is a grandfather and old, the other a grandson and young, or that one is an employer and the other an employee. The question, as to parties so situated, is a question of fact dependent upon the circumstances in each case. There is no presumption of inequality either way from these relations merely." See *Williams vs. Williams*, 63 *Md.*, 399; *Mott vs. Mott*, 49 *N. J. Eq.*, 198.

And in the case of *Mott vs. Mott*, the Court says: "When a controlling influence is not conclusively inferred from the character of the relation, it may be necessary to prove that confidence was in fact reasonably reposed by the one in the judgment of the other."

In the case of *Howe vs. Howe*, 99 *Mass.*, 99, where the circumstances were far more suspicious than any shown in this case, the Court held that the burden of proof was

on the plaintiff, and said that "influence properly gained, although used for a selfish purpose, and to obtain an unjust and unfair advantage, will not avoid a deed thereby obtained unless there is fraud and duress, or the influence is exerted by a stronger over a weaker one, in such a manner and to such a degree as to substitute the will of the person exerting the influence in the place of that of him upon whom it is exerted, so that the latter is no longer a free agent." See also *Nailor vs. Nailor*, 5 *Mackey, Sup. Ct. D. C.*, 93 ; *Hunter vs. Atkins*, 3 *Mylne & Keen*, 113 ; *Conley vs. Nailor*, 118 *U. S.*, 127 ; *Harrison vs. Guest*, 6 *DeGex, M. & G.* 424.

Beyond the fact that the donor lived in the family of the donee, there is no proof of influence of any character. There is no proof to show even an attempt to control or influence the donor. The mere fact of age and relationship and confidence creates no presumption of inequality. *Cowee vs. Cornell et al.*, 75 *N. Y.*, 100.

The cases in this Court are not in conflict with the New York, New Jersey and Massachusetts rule, which requires facts to establish the confidential relation, and in none did it arise from the attitude of the parties alone.

In the earliest case of *Brooke et al. vs. Berry*, 2 *Gill*, 83, there were two elements uniting to cause the burden of proof to be placed upon the donee.

1st. There was a complete agency.

2nd. There was absolute imbecility on the part of the grantor, and fraud proven in the obtention of the deed, and all the facts set forth at length in the case show a condition of control which is not consistent with free agency, and it was upon these facts, not the relation itself, that induced the Court to set aside the deed.

In the case of *Highberger et al. vs. Stiffler*, 21 *Md.*, 352, the relation was that of parent and child, and yet the Court did not avoid the deed upon the confidential relation alone, but by reason of the proven acts of undue in-

fluence, and that the deed was obtained by fear, and because there was no consent of two minds, but a merger of the principal's mind in that of the agent.

In *Todd vs. Grove*, the relation of principal and agent existed to the fullest extent, but it was not upon that ground alone that relief was granted. The facts showed an absolute mastery of the mind of the donor by the donee, who made use of every artifice and fraud to induce his imbecile brother to sign papers in order to get possession of his property. It was upon such case, fully developed by the testimony, that the Court set aside the gifts.

The rule in such a case as this is, that there must be confidence reposed on the one side, and influence acquired and improperly exercised on the other, to bring a case within the general rule. *Brooke et al. vs. Berry*, 2 *Gill*, 96-98 ; *Highberger vs. Stiffler*, 21 *Md.*, 352 *and* 353 ; *Todd vs. Grove*, 33 *Md.*, 195 ; *Taylor vs. Taylor*, 8 *Howard (U. S.)*, 200, 201 ; *Jenkins et al. vs. Pye et al.*, 12 *Peters*, 253, 254 ; 1 *Story's Equity Juris.*, *Secs.* 308 *and* 309 ; *Huguenin vs. Baseley*, 2 *Leading Cases Eq.*, 1156.

In the case of *Eakle et al. vs. Reynolds*, 54 *Md.*, 305 ; although it was the relationship of uncle and nephew, principal and agent, the relations were held not *per se* confidential, and the plaintiffs were required to show fraud. In each of the above cases, decided by this Court, there was some violation of the established rule of *bona fides* or fairness. In *Brooke vs. Berry*, fraud and imbecility were established. In *Highberger vs. Stiffler*, fear, fraud and undue influence were proven. In *Todd vs. Grove*, the mastery of a strong mind over a weaker one, undue influence to accomplish a desired end, was clearly shown.

In *Wise vs. Swartzwelder*, 54 *Md.*, 292, the bill was filed to set aside an absolute deed, executed by Mrs. Wise to her brother. The proof showed her suffering to be intense, and that, about the time of the execution of the deed, her

mind wandered; she saw strange visions, talked incoherently and failed to recognize her friends. The deed was prepared by the donee, who took a justice of the peace to her room, where she lay prostrate with pain and disease, where it was executed. The proof further shows that this disposition of the property was contrary to her often expressed intention, and that her brother's influence over her was complete, and that she would do anything he told her to do. Yet the Court said the facts were not sufficient to throw the *onus* of proof on the defendant, for the reason given in *In re Yeates*, 99 *N. Y.*, 100. It was not a case where the relation is conclusively presumed.

In this case the plaintiffs have entirely failed in their proof to establish any such relation between the donor and donee as would avoid the deed, although all the parties in interest are witnesses, and can only claim an avoidance because of an alleged failure of the donee to meet the burden of proof; and stress is laid on the fact that the donee failed to testify; but it was believed at the trial below, and he was advised by his counsel, that he was not a competent witness. The language of the Court in *Whitridge vs. Whitridge,* 76 *Md.,* 54, seems to confirm the position.

If then he was not a competent witness, or even if so, it was believed he was not, no conclusion adverse to him should be drawn. The plaintiffs could have examined him if they desired.

*Norman B. Scott, Jr.,* and *Alexander Armstrong,* (with whom was *W, J. Zacharias,* on the brief,) for the appellees.

When a deed is made to a grantee who at once is the confidential friend, the business adviser and agent of the grantor, conferring such valuable interests upon the grantee, and imposing such loss and detriment upon the grantor,

the law *prima facie* condemns the deed, and casts upon the grantee the obligation to satisfy the Court that the transaction was in all respects fair and reasonable, made voluntarily and deliberately, and with full knowledge on the part of the grantor, of all facts material for one to know and understand who was about to make so important a deed, and with full and clear understanding on his part of the legal effect of the deed. The relation of confidence existing between the grantor and grantee in this case casts upon the grantee the burden of proof to show the entire fairness, reasonableness and good faith of the transaction. *Huguenin vs. Baseley,* 2 *Lead. Cases in Equity, Pt.* 2, 1156 *and notes* ; *Brooke et al. vs. Berry,* 2 *Gill,* 62 ; *Highberger vs. Stiffler,* 21 *Md.,* 338 ; *Todd vs. Grove,* 33 *Md.,* 188 ; *Cherbonnier vs. Evitts et al.,* 56 *Md.,* 276 ; *Kerby vs. Kerby,* 57 *Md.,* 345 ; *Williams vs. Williams,* 63 *Md.,* 371 ; *Whitridge vs. Whitridge et al.,* 76 *Md.,* 54.

When the circumstances are such as to give rise to an inference of undue influence, the burden of proof is on him who claims under the deed or transfer to *rebut the presumption* and show that the gift was not obtained through means which the Court would condemn. *Huguenin vs. Baseley,* 2 *Lead. Cases in Equity, Pt.* 2, 1195 ; *Todd vs. Grove,* 33 *Md.,* 193.

It is not shown that Bitner had any " well settled or often declared purpose " to give his farm to Zimmerman. There is no evidence whatever of this. On the contrary, there is testimony showing his great affection for and interest in his sister, and his declared purpose to Mr. Zacharias when he was in Franklin county about six weeks before his death, that he wanted to make a will and leave his property to his sister. Can it be argued for one moment that, if he had made his will on that day in Chambersburg, the Zimmermans would have been the sole objects of his bounty? Neither was there, at that time, any suggestion of a deed.

It is not a question of capacity to make a contract or do a certain thing. Nor is it a question of what the intention was at the time the act was done, but *how* the intention was produced. *Todd vs. Grove,* 33 *Md.,* 195 ; *Huguenin vs. Baseley,* 2 *Lead. Cases in Equity, Pt.* 2, 1193, 1194, 1195.

The plaintiffs have shown such a state of facts as casts upon the defendant the *onus* of showing the righteousness of the transaction complained of.

How does he meet this requirement? He does not deny the relationship. He does not offer any testimony to show that Bitner's act was his own, uninfluenced act.

He has absolutely failed to explain the transaction. Under the rulings of the Court in *Graves et al. vs. Spedden et al.,*46 *Md.,*538-539, and in *Kerby vs. Kerby,*57 *Md.,*359, Zimmerman and his wife could have testified and given the Court the benefit of light on this subject. But he has refused to do this, and maintains a silence which is deliberate and intentional; knowing that he could not justify his conduct in a Court of equity, he keeps his mouth shut and takes his chances. His silence is convincing evidence of his guilt.

In this connection, the attention of the Court is called to the comments of this Court on the refusal of the caveatees to testify in the case known as the Bishop Ames Will Case, recently decided. (*Hiss vs. Weik,* 78 *Md.,* 452).

ROBINSON, J., delivered the opinion of the Court.

This is a bill filed by the heirs at law of John Bitner to set aside a deed of gift made by him of a valuable farm, containing two hundred and ninety acres of land, which, with the exception of a few hundred dollars, constituted the entire property belonging to the donor. The bill alleges that the most intimate and confidential relations existed between the donor and donee, and that the

Zimmerman *vs.* Bitner, and others.

deed in question was procured by the importunities and undue influence exercised by the latter over the donor.

Before proceeding to consider the law as applicable to cases of this kind, we shall refer briefly to the facts and circumstances surrounding the execution of the deed, and the relation in which the parties stood to each other.

The donor was at the time of the execution of the deed of gift in his seventy-fifth year. He was very illiterate, unable to read or write, but at the same time seems to have been a person of ordinary judgment,—equal, perhaps, to the common purposes of life, and competent to execute a valid deed or contract. He was born in Pennsylvania, and lived with his father on a farm until the death of the latter, which occurred about twenty-four years ago. After his father's death he lived with his sister, Catharine, on the home place, until ten years ago, when he bought a farm in this State, for which he paid $21,500, the voluntary conveyance of which is the subject matter of this litigation.

This farm he rented to one Zimmerman, who had married his niece, and for some years prior to the deed of gift to Zimmerman he lived with him and his family, spending, however, a part of each year with his sister, Catharine, between whom the most affectionate relations existed. On Thursday, the —— of February, 1891, he was taken sick, and although, not seriously sick at that time, Zimmerman and his wife sat up with him all night; and what took place during that night, what was the subject-matter of conversation, and whether anything was said about the disposition of his property, the record does not disclose. On the next day, Doctor Mason was called to see him, and found him walking about the room with his coat off. Before the doctor had time to make any examination as to his condition, Bitner said to him, that he was very sick, and if there was any danger of his dying, he wanted to know it, as there were some matters he wanted to attend

to. The doctor did not, however, consider him seriously sick, and so told him. On Sunday following, the Doctor again called to see him, and upon examination found a slight congestion of the right lung; and thereupon the Doctor told him that he regarded him as a very sick man, and if he had any matters to look after, he had better attend to them. He then requested the Doctor to ask Mr. Smith, a highly esteemed member of the Hagerstown bar, to come and see him, as he wanted him *"to write a deed and a will."* The next day Mr. Smith and Mr. Middlekauff, a justice of the peace, went to Bitner's house, and in his room the deed and will were both prepared by Mr. Smith, during the preparation of which Zimmerman and the justice of the peace sat in an adjoining room. After the papers were drawn, the justice of the peace was called into Bitner's room to take the acknowledgment of the deed, and Mr. Smith and himself attested the execution of the will. By the deed, Bitner conveyed his farm to Zimmerman, without reserving any interest whatever to himself, the consideration named in the deed being the nominal sum of five dollars, and love and affection. By the will, he bequeaths to Zimmerman his entire personal property, and then, by way of explanation, the testator says: "I thus give to the said J. Monroe Zimmerman, all my property and estate because he is married to my niece, and I have been living with them for many years, and have a high regard and affection for them, and desire they shall enjoy the same to the exclusion of my other relatives."

On Saturday following the execution of the deed and will, Bitner died leaving surviving him his sister, Catharine, and a number of nephews and nieces, his heirs at law.

For some years prior to the execution of this deed of gift, the donee had been the general agent of the donor, and as such was entrusted with, not only the general management of the farm and all improvements to be made thereon, but also with all other matters, such as buying

fertilizers, the sale of the crops, and the receipt and deposit of the proceeds of sale. He was, in fact, the trusted and confidential adviser of the donor, and one upon whom he relied for advice and counsel in all matters concerning his affairs. So the case with which we are now dealing is one in which an old and illiterate person makes an absolute deed of gift of all his property, with the exception of a few hundred dollars, to one who stood in the closest and most confidential relation to him. And dealing with such a case, there cannot be, it seems to us, any question as to the principles of law by which it is governed. And, although the law does not declare invalid a gift or conveyance of property to one standing in a confidential or fiduciary relation to the donor, yet Courts always watch with a jealous scrutiny all such dealings and transactions, not merely for the purpose of ascertaining whether the donor understood the nature and effect of the transaction itself, but also for the purpose of ascertaining whether the benefit received by the donee was procured by reason of the influence possessed by him and exercised over the donor. And it is well settled by a long line of authorities that when such a gift or conveyance is questioned, the *onus* is upon the donee to prove to the satisfaction of the Court that the conveyance was the free, deliberate and voluntary act of the donor, and made by him with full knowledge as to its effect and operation; in other words, that he knew that the, *conveyance itself operated to divest him of all title to the property and to vest it in the donee.*

A good deal has been said as to what constitutes a *confidential relation* within the operation of the principle, but Courts have always been careful not to fetter the operation of the principle by undertaking to define its precise limits. The cases of parent and child, guardian and ward, trustee and *cestui que trust,* principal and agent, are familiar instances in which the principle applies in its strictest sense. But its operation is not confined to the

dealings and transactions between parties standing in these relations, but extends to all relations in which confidence is reposed, and in which dominion and influence resulting from such confidence, may be exercised by one person over another. No part of the jurisdiction of the Court is more useful, it has been said, than that which it exercises in watching and controlling transactions between parties standing in a relation of confidence to each other. And being founded on the principle of correcting abuses of confidence, it ought to be applied to every case in which a confidential relation exists as a fact—where confidence is reposed on the one side, and the resulting superiority and influence on the other. *Billage vs. Southee,* 9 *Hare,* 534 ; *Tate vs. Williamson, L. R.* 1 *Eq.,* 528, *and L. R.* 2 *Ch. App.,* 55.

The broad principle, says Vice-Chancellor WOOD, on which the Court acts in cases of this description, is that wherever there exists such a confidence, of whatever character that confidence may be, as enables the person in whom confidence or trust is reposed, to exert influence over the person trusting, the Court will not allow any transaction between the parties to stand, unless there has been the fullest and fairest explanation and communication of every particular resting in the breast of the one who seeks to establish a contract with the person so trusting him. *Tate vs. Williamson, L. R.* 1 *Eq.,* 528.

Tested by these well established principles, the relations existing between the donor and donee in this case were beyond question of such a character as to cast the *onus* upon Zimmerman, the donee, of proving that the deed of gift was the voluntary and deliberate act of the donor; that he knew at the time he signed it he was thereby divesting himself of all interest in the property, and was, in fact, transferring his entire interest to the donee. And this the donee has wholly failed to do. There is no evidence in the record to show that the deed was ever in

fact read to the donor. Mr. Middlekauff, the justice of the peace, says he was called into the room to take the acknowledgment of the deed, and that it was not read over to the donor in his, the witness' presence. Nor is there a particle of evidence to show that any explanation was made to the donor as to the effect and operation of the deed, or that he understood its import and meaning. Mr. Smith, who prepared the deed, and whom it is but fair to presume knew all the facts and circumstances surrounding its execution, who knew at least whether it was read over to the donor, and whether its legal effect and operation was explained to him, and whether he understood it, and whether any reasons were assigned by the donor why he made Zimmerman his beneficiary to the exclusion of his own sister and other relatives, is not even examined as a witness. And though the bill charges that the deed was procured through the acts, importunities and undue influence of Zimmerman and his wife, neither of them is examined or offer to testify. But this is not all; after the case had been argued and submitted to the learned Judge below, finding the proof defective in these particulars, he wrote to the counsel, one of whom was Mr. Smith, the draughtsman of the deed, and suggested that additional testimony ought to be taken, and referred to the fact that Zimmerman himself had not testified, and offered to remand the case at the instance of either party. But these suggestions and this offer on the part of the Judge, the donee, through his counsel, declined to accept, and replied by saying they preferred to have the case decided upon the testimony already taken. Here was an invitation to the donee to go upon the witness stand and to make a clean breast of the transaction,—to explain the circumstances surrounding the execution of the deed, and to deny, if he could, the charge that it was procured by the importunities and undue influence of himself and his wife,—and yet this invitation he declined. We cannot es-

cape the conclusion that the refusal on the part of the donee to testify in regard to facts peculiarly within his own knowledge, and to offer evidence which it was in his power to produce, was because he felt and knew the evidence would be unfavorable to him. In the recent case of Bishop Ames' will (*Hiss vs. Weik,* 78 *Md.,* 452), against the probate of which a caveat was filed on the ground of fraud and undue influence practised by Mr. and Mrs. Hiss, the beneficiaries under the will, and in the trial of which neither Mr. nor Mrs. Hiss offered to testify, we said: " It is a generally accepted rule of law that the suppression or non-production of pertinent and cogent evidence necessarily raises a strong presumption against the party who withholds such evidence where he has it in his power to produce it." And this we said in a case where there was a caveat to a will, and the burden of proof was upon the caveators. Here we are dealing with a gift to one standing in a confidential relation to the donor, and upon whom the burden of proof is to show to the satisfaction of the Court that it was the voluntary act of the donor, and was not procured by any influence exercised over him by the donee.

Not only has the donee failed to offer any evidence to rebut the presumption arising from the confidential relation in which he stood to the donor, but there is another fact,—and a suspicious one, it seems to us,—and that is that the donor should want both a deed and a will prepared at the same time. He was, as we have said, without any education, unacquainted with legal forms, and unused to the transaction of legal business, and it seems highly improbable that he should suggest the necessity of making a deed and a will. There is, of course, a wide distinction between a deed, which is irrevocable, and which transfers the title to the property upon its execution and delivery, and a will, which is revocable and does not take effect till the testator's death. But we can hardly suppose that

such a distinction suggested itself to a person of the
donor's capacity and intelligence. On the contrary, it is
more probable that it was the suggestion of some one else.
But be that as it may, we rest the affirmance of the de-
cree below on the ground that the donee has failed to
offer any evidence to rebut the presumption arising from
the relations of the parties against the validity of the
deed. To sustain a voluntary deed, upon the proof before
us, would be to break down the safeguards which Courts
of equity have thrown around the dealings and transac-
tions of parties standing in a confidential relation to each
other; and instead of shutting the door to temptation, it
would invite persons to secure benefits to themselves, to
the detriment of those, the confidence of whom they had
betrayed.

The case of *Eakle et al. vs. Reynolds,* 54 *Md.,* 305, relied
on by the appellant, differs widely from the one now before
us. In that case the uncle conveyed to a favorite nephew
a farm valued at between twelve and fifteen thousand dol-
lars, but he was careful enough to reserve a life estate to
himself. Prior to the deed of gift he had made three wills,
in each of which he gave legacies to other relatives, mak-
ing his nephew the residuary devisee. He had lived with
his uncle from early childhood, and for some time prior
to the execution of the deed he had occasionally transacted
business for him, and during his uncle's sickness had the
general management of the farm. Whatever suspicion
attached to the execution of the voluntary deed in that
case, the donee proved that it was the free and voluntary
act of the donor, and that the latter signed with full
knowledge of its import and meaning. Mr. Syester, then
a member of the Bar, who prepared the wills and the deed
in question, testified that the donor fully understood the
legal effect and operation of the deed, and assigned the
reasons which induced him to make it. Amongst other
things, he said he was afraid that the legacies bequeathed

in the will would be considered as charges upon the farm, and that to pay them, his nephew would be obliged to sell part of it, and this he wanted to avoid. He further said, that a large part of his property was the result of the joint labors of his brother William, the father of the nephew, and he thought the father's interest ought to go to his son, and he wanted his part to go to him also. All such proof, however, is wanting in this case.

*Decree affirmed.*

