HARDY *v.* BROOKHART, ET AL., ETC.

[No. 3, September Term, 1968.]

*Decided January 14, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Russell Hardy, Sr.* for appellant.

*James Willard Davis,* with whom was *William B. Dulany* on the brief, for appellees and cross-appellants.

McWILLIAMS, J., delivered the opinion of the Court.

The two questions presented here are relatively simple but before we can get at them we must hack our way through a thicket of pleading. Hardy, as appellant, charges the trial judge, Weant, J., acted improperly when he refused to allow him to file two counterclaims after the expiration of the time within which counterclaims must be filed. Maryland Rule 314 d 2. Brookhart,[1] as cross appellant, says that Judge Pugh was in error when he quashed his nonresident attachment but his appeal, we think, if not too late, is, for all practical purposes, moot.

. On 27 April 1967 Brookhart instituted in the Circuit Court for Montgomery County a nonresident attachment proceeding against Hardy (also an attorney) looking to the collection of two notes, one for $1,500, the other for $5,000. The attachment was laid in the hands of Barry H. Helfand, Trustee for Hardy

---

1. The appellants are co-partners practicing law, in Washington, D. C., under the firm name and style of Brookhart, Becker and Dorsey. In this opinion they will be called "Brookhart" and the singular rather than the plural will be used.

and his former wife. Helfand was summoned as garnishee. In his plea he stated he was possessed of $23,000 belonging to Hardy. Hardy, "appearing specially [2] and solely for the purpose," and in proper person, moved to quash the attachment. On 11 August 1967 Hardy, again in proper person, filed a plea in which he alleged the notes were "without consideration," that Brookhart had been fully paid, that the legal services for which the notes had been given had not been performed and that he "is not indebted as alleged." On the same day he filed an amended motion to quash. On 24 August 1967 Judge Pugh held a hearing on the motion to quash. At the conclusion thereof he took the matter "under advisement." On 31 August 1967 Hardy filed a motion "for leave to file counterclaims against" Brookhart. He recited therein that the counterclaims had not been filed with his plea in order "to permit careful ascertainment and consideration by him of the evidence, facts and law upon which they are based." Attached to his motion was "Counterclaim No. 1" in which he claimed to be entitled to $5,000 for legal services rendered by him to Brookhart. In "Counterclaim No. 2" he charged negligence in Brookhart's conduct of his litigation, claiming $40,000 damages. On 6 September Hardy filed a suggestion and affidavit of removal. On the same day Judge Pugh, stating he was "satisfied that the ends of justice will be best served by quashing the attachment," ordered it "stricken." He further ordered, however, "that the lien of said attachment * * * remain in full force and effect" as to Helfand (the garnishee) until "the final determination of the trial against" Hardy. On 21 September, acting on Hardy's suggestion and affidavit of removal, he ordered the record sent to the Circuit Court for Carroll County for trial. Judge Pugh took no action on the motion for leave to file the counterclaims.

The transcript of the record arrived in Carroll County on 6 October 1967. On 19 October, pursuant to Rule G52 b,[3] Hel-

---

2. Special appearances were abolished at least 10 years ago. Rule 124 c.

3. *"Confession of Assets—Payment into Court.*

"The garnishee may confess such assets including money, as he has in his hands, and may pay into court the money in his hands to be awarded to the party having a legal right thereto."

fand filed a "Confession of Assets" in which he prayed an order allowing him to deposit $6,952.75 with the clerk of the court stating he had that much in hand belonging to Hardy. On 20 October Judge Weant ordered the clerk to accept that amount from Helfand and hold it subject to his further order. We shall assume the money is still there.

On 6 December 1967 Hardy moved to modify Judge Pugh's order of 6 September 1967 by striking the paragraph retaining the lien of the attachment. On 2 January 1968 Judge Weant heard argument on the motion for leave to file counterclaims and the motion to modify Judge Pugh's order. On the same day he denied the motion to file counterclaims. Two days later he signed and filed the following order:

> "The Motion to Modify Order Quashing Attachment heretofore prayed in this case by the Defendant [Hardy] having been duly heard and considered by this Court and it being our opinion that the Order of court passed in this matter dated September 6, 1967, should be modified by the deletion of the third paragraph thereof, and it being further the opinion of this Court that the Plaintiffs herein should not be deprived of their right of an appeal from the said Order of September 6, 1967, striking the attachment filed herein by reason of the fact that 30 days have expired since the date of said Order.
>
> "It is thereupon, this 4th day of January, 1968, by the Circuit Court for Carroll County, ORDERED that so much of the Order passed herein dated September 6, 1967, reading:
>
>> 'ORDERED, that the lien of said attachment be, and the same shall remain in full force and effect as to the said Barry H. Helfand, Trustee, until the final determination of the trial against the said Russell Hardy, Sr.'
>
> be, and the same is hereby, deleted from said Order. And it is further ORDERED that the remainder of said Order, after said deletion, be, and the same is hereby, made a part hereof so as to allow an appeal within thirty (30) days from the date hereof."

On 30 January 1968 Hardy, without leave of court, filed a cross-claim [4] which was nothing more than a restatement, in the form of a cross-claim, of his previously filed counterclaims. On the same day he filed an order for an appeal to this Court from Judge Weant's order of 2 January 1968 denying his motion for leave to file counterclaims. On the day following Brookhart filed an order for an appeal which is as follows:

> "Pursuant to the Order of the Circuit Court for Carroll County dated January 4, 1968, *please enter an Appeal* to the Court of Appeals of Maryland *from the Order* striking the attachment against the Defendant *entered* in this action *on September 6, 1967.*" (Emphasis added.)

On 9 February 1968 Brookhart moved that the cross-claim be not received or that it be stricken. The motion has not been considered by the court below. Thus ended the pleading.

## I.

That Judge Weant did not say why he denied Hardy's motion is disappointing. That neither Hardy nor Brookhart made use of Rule 18 c [5] is a source of some annoyance, especially in view of the unusual circumstance that they are all attorneys. *See Lewis v. Germantown Ins. Co.,* 251 Md. 535, 248 A. 2d 468 (1968). Nonetheless, we have given careful consideration to the relevant facts discernible from the record and we do not see any which, in our judgment, add up to an abuse of discretion.

---

4. The status of the "cross-claim" is not before us.

5. *"Memorandum of Grounds for Decision.*

"The court shall upon motion of any party, made at any time prior to the expiration of the time for appeal, dictate to the court stenographer or reporter, or prepare and file with the clerk, a brief statement of the grounds for its decision, and the method of determining the damages, if any, awarded by the final judgment entered in an action tried by the court without a jury and in an action in equity; provided, however, that no such statement shall be required in an action tried *ex parte.*"

It will be recalled that suit was filed on 27 April 1967. We shall put aside the question whether Hardy's motions to quash were "responsive pleadings" within the meaning of Rule 314 d 2,[6] and we shall assume that the plea filed 11 August 1967 is the "responsive pleading" which controls the time within which his counterclaims should have been filed. Hardy excuses and seeks to justify his failure to file the counterclaims within the time limited by the rule by suggesting that he needed the time for a "careful ascertainment and consideration of the evidence, facts and law upon which they are based." It is quite clear, however, he must have been fully aware of all the "evidence, facts and law" on 27 April 1967, when the suit was filed (the services rendered by Brookhart were in connection with litigation spanning the years 1963-1967). We cannot understand, therefore, why he would need another 5 days since he had from 27 April to 11 August to "consider" the evidence and facts apparently well-known to him for a long time. If, indeed, more time was needed for the ascertainment and consideration of the *law* it should have occurred to Hardy during the running of the 15 day period that, at any time before the expiration of the 15 day period, the time could have been extended for the asking.

Judge Weant may have thought, in the light of the record before him, that the counterclaims were somewhat flimsy; perhaps not without reason. The $5,000 note was executed and delivered pursuant to an agreement dated 3 March 1966 between Hardy and Brookhart wherein it is recited that Brookhart had obtained a favorable result for Hardy and that Hardy *agreed* to pay *an additional* $5,000 *for services rendered.* One wonders why Hardy would have committed himself to pay $5,000 for legal services if he intended later to claim an offsetting amount from his attorney for services rendered to him in the course of his (Brookhart's) rendering services to him (Hardy). And' had he really been dissatisfied with the job done by Brookhart

---

6. *"Time for Filing.*

"A counterclaim or cross-claim shall be filed within fifteen (15) days from the expiration of the last day for filing the responsive pleading to the claim, counterclaim, cross-claim or third party claim to which the counterclaim or cross-claim is filed."

it is odd he did not express his dissatisfaction by refusing to sign the note. Probably the true cause of his discontent was that the appeal did not turn out as well as he expected.

It also may have occurred to Judge Weant that recoupment, Rule 342 c 1, would be available to Hardy up to the full value of the Brookhart claim, and that it was somewhat less than fair to allow him to introduce into the trial a claim for damages based on negligence, a claim he was still free to press against Brookhart in a separate suit in the District of Columbia, where he practices his profession.

Hardy places great reliance upon our decision in *A. & P. Co. v. Royal Crown Bottling Co.,* 243 Md. 280, 220 A. 2d 598 (1966). In that case Judge Hammond (now Chief Judge), for the Court, discussed the interrelationship of Rules 314 d 2, "Counterclaim and Cross-Claim — Time of Filing," 320, "Amendment," and 5 w, "Definition—Proceeding." We have in mind that in *A. & P. Co.* we reversed the order of the trial judge striking out the cross-claim, the filing of which he at first had allowed. In the case at bar, however, we think a rather different situation presents itself. As stated by Judge Hammond:

> "Judge Naughton's three reasons for rejecting A. & P.'s cross claim—that it did not arise out of but was the result of the original action, that the original action was in tort and the cross claim in contract and that damages would not be fully ascertainable at the trial— are sought to be buttressed by Royal Crown's assertion that an already complicated case would be unduly and unfairly further complicated by the introduction of the indemnity agreement (the unfairness which Royal Crown sees appears to be that it would not only be a defendant potentially liable as a tortfeasor it would also be a defendant who had promised to pay A. & P.'s liability to any person injured by reason of Royal Crown's merchandise)." *Id.* at 286.

One should not overlook the fact that in *A. & P. Co.* our principal concern was the impact of Rule 314 b [7] upon A. & P.'s

---

7. *"Cross-Claim against Co-Party.*

"In any action any party may plead as a cross-claim

*cross-claim*. Hardy's appeal is from the denial of leave to file a *counterclaim* and it is clear, we think, that Rule 314 b does not apply to counterclaims. Judge Hammond, in *A. & P. Co.,* concluded by saying:

> "We are not unmindful of the comments in *Rosoff* at p. 436 [*Northwestern Nat. Ins. Co. v. Rosoff,* 195 Md. 421] of 195 Md. that questions as to whether defendants should be impleaded are best left to the sound discretion of the trial judge and that his decision should be disturbed only where it is apparent that some serious error or abuse of discretion has occurred. In the case now before us, Judge Naughton essentially did not exclude the cross claim because he found that Rule 314 b applied but would be unworkable or awkward, cumbersome or complicated in operation, but because he felt that the cross claim did not arise out of the original action and the two claims, one in tort and one in contract, were incompatible and, therefore, the Rule did not apply. This reading of Rule 314 b was, as we see it, erroneous. We think the purposes of Rule 314 b would be unnecessarily and prejudicially frustrated by disallowing a cross claim typically and routinely within its ambit." *Id.* at 290-91.

Here we are concerned only with the question whether, in the circumstances, Judge Weant's denial of Hardy's motion amounts to an abuse of discretion. It seems to us, as perhaps it may have seemed to Judge Weant, that Hardy's counterclaims were little more than a defensive ploy. On 27 December 1967, 5 days before the hearing (2 January 1968), Hardy filed a "Memorandum of Law in Support of Motion to Modify Order

---

any claim he has against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein, or relating to any property that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant."

Quashing Attachment." Nowhere in the 5 legal size pages of that memorandum is there any mention of the motion for leave to file counterclaims. The docket entries indicate that there was a hearing but, of course, there is nothing to suggest what was argued, or by whom. It seems at least likely that Hardy's main effort was aimed at the motion to quash and that the motion for leave to file counterclaims was given short shrift. We do not feel justified in assuming that neither Hardy nor Brookhart made any reference to the motion for leave to file counterclaims or that Judge Weant ignored it. We think we are bound to assume that Judge Weant gave the matter careful consideration. There is no evidence that he did otherwise or that he abused his discretion and without such evidence we shall not disturb his ruling.

## II.

It will be recalled that the whole purpose of the cross appeal was to restore the lien of the attachment. While we think it is likely the cross appeal is too late since Brookhart elected to appeal from the order of Judge Pugh rather than from Judge Weant's order of 2 January 1968, the question presented, from the standpoint of practicality, now seems to be moot. As earlier mentioned there was $6,952.75 on deposit in the registry of the court when Judge Weant passed his order of 2 January 1968. The clerk has been directed to hold "said money until further order" of the court. The claim, $6,850, is less than the amount on deposit. If Brookhart is in the end successful the money will be there to satisfy his judgment. Since there appears to be a complete absence of prejudice the cross appeal will be dismissed. Rule 835 a 2.

*Order of 2 January 1968 affirmed.*
*Cross appeal dismissed.*
*One-half of costs to be paid by appellant.*
*One-half of costs to be paid by cross appellants.*