# HARDY *v.* BROOKHART ET AL., ETC.

[No. 17, September Term, 1970.]

*Decided October 19, 1970.*

318

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Russell Hardy, Sr.*, in proper person.

*James Willard Davis*, with whom were *Dulany, Davis & Smith* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

This is an appeal from a judgment in favor of the appellees, plaintiffs below, in the amount of $7,647.50. Appellees, members of a law firm, brought suit against appellant Hardy (their former client) on two promissory notes made to the order of the firm for legal services rendered. It is the second time in twenty months that the differences between the parties have surfaced in this Court.[1] This time we reach the merits of the case.

The issues which this Court must decide are whether the notes were signed voluntarily and knowingly by the appellant, and if so, whether there was valid consideration for the notes.

---

1. See Hardy v. Brookhart, et al, 252 Md. 107, 249 A. 2d 148 (1969), wherein Hardy appealed the action of the lower court in denying him the right to file counterclaims against the present appellees.

The facts which gave rise to the controversy before us are as follows:

In 1962, appellant Hardy, in the midst of marital difficulties, sued his wife in the United States District Court for the District of Columbia in Civil Action 4075-61. This was an effort by him to recover the entire proceeds from the sale of their former residence in Kenwood, Maryland, and to impress a trust on certain securities held by his wife, but which she had purchased with household funds given her throughout the years by the appellant. Initially, Hardy, himself an attorney, handled his own case. However, pursuant to an agreement dated November 27, 1963, he retained appellee Brookhart and an attorney by the name of Irving G. McCann (now deceased) to represent him in the above mentioned suit. The agreement of November 27, 1963, is referred to in subsequent agreements between the parties and while we deem it unnecessary to quote the entire agreement, we think it important to keep in mind that the agreement of November 27, 1963, provided that in return for their legal services, Hardy was to pay the attorneys $5,000.00, but "if the case shall be tried and a judgment entered for Hardy in the amount of $40,000.00 or more, the total compensation payable to Brookhart and McCann shall be $10,000.00."

On October 30, 1964, the district court found for Hardy in the suit regarding the securities, and impressed them with a trust in his favor amounting to $22,652.07. As to the proceeds from the sale of the house, the district court ruled that these proceeds, in the form of several cashier checks, were property held in tenancy by the entirety, and inasmuch as the appellant and his wife were still legally married, could not be awarded to either party without the consent of the other.

Appellant Hardy elected to appeal this decision to the United States Court of Appeals for the District of Columbia Circuit, and toward this end executed an agreement on March 16, 1965, with the law firm of "Brookhart, Becker & Dorsey, Esquires, a partnership." In this second agreement Hardy acknowledged his indebtedness to

Brookhart and McCann in the amount of $5,000.00 by virtue of the first agreement signed in November, 1963, and executed a demand note payable to those two attorneys. He also retained the firm to represent him in his appeal to the United States Court of Appeals, agreed to pay them $1,500.00 to perfect the appeal, and executed a promissory note for that amount "payable to said law firm at the time of the court of appeals decision." (It should be noted that both of these notes have been paid and are not the subject of the present lawsuit.)

On April 20, 1965, Hardy obtained a divorce in the Circuit Court For Montgomery County. On December 15, 1965, the United States Court of Appeals affirmed the district court decision, but on January 5, 1966, modified its decision (apparently in view of the recent divorce) to allow Hardy to renew his motion in the district court for the entire proceeds from the sale of the residence. Hardy returned to the district court and persevered with his litigation.

In a decision rendered February 23, 1966, the district court again denied Hardy's claim to the entire proceeds, but rendered judgment for him in the amount of $22,-510.33, which represented one-half of the proceeds from the sale of the house after certain tax claims had been satisfied. Appellant Hardy, distressed with this second ruling of the district court, decided on yet another appeal. Accordingly, he executed a third agreement in which there was reference again made to the agreement of November 27, 1963. We think it necessary to set forth this third agreement in full:

### "AGREEMENT"

"This AGREEMENT made and entered into this 3rd day of March, 1966, by and between RUSSELL HARDY, SR., and BROOKHART, BECKER & DORSEY, ESQUIRES, a partnership, witnesseth:

WHEREAS, a final judgment was entered on February 23, 1966, by the United States District

Court for the District of Columbia in the case of Russell Hardy, Sr., Plaintiff, v. Elisabeth C. Hardy, Defendant, Civil Action Number 4075-61, with respect to Count 4 of the Complaint, and a timely Notice of Appeal shall be filed as to said judgment by plaintiff; and

WHEREAS, by virtue of a certain AGREEMENT dated November 27, 1963, and the judgments of said District Court of October 30, 1964, and February 23, 1966, said RUSSELL HARDY, SR. [is indebted to the law firm of BROOKHART, BECKER & DORSEY in the additional sum of $5,000.00] for professional services incident to their representation of him in said District Court with respect to Count 4 of the Complaint whereby said judgment of February 23, 1966, was rendered; and

WHEREAS, the said RUSSELL HARDY, SR., is desirous of retaining the services of said law firm of BROOKHART, BECKER & DORSEY to represent him in said appeal with respect to said judgment of February 23, 1966, before the United States Court of Appeals for the District of Columbia Circuit.

NOW, THEREFORE, for and in consideration of the mutual covenants herein contained, the parties agree as follows:

1. The said law firm of BROOKHART, BECKER & DORSEY is retained by RUSSELL HARDY, SR. to represent him in connection with the appeal from said judgment of February 23, 1966.

2. RUSSELL HARDY, SR. shall compensate the said law firm of BROOKHART, BECKER & DORSEY for professional services to be rendered in said Court of Appeals in the sum of $1,500.00, which sum shall be due and payable upon a decision being rendered in connection with the aforesaid appeal by said Court of Appeals, and

such debt shall be evidenced by a non-interest bearing promissory note executed contemporaneously with the Agreement by said RUSSELL HARDY, SR., payable to said law firm at the time of the court of appeals decision.

3. Contemporaneous with the execution of this AGREEMENT, RUSSELL HARDY, SR. shall execute a promissory note payable to Brookhart, Becker & Dorsey, on demand in the face amount of $5,000.00 bearing interest at the rate of 6% per annum from date of execution until paid, which sum represents the additional amount payable by RUSSELL HARDY, SR. to said firm, pursuant to said AGREEMENT of November 27, 1963, and by virtue of the judgments of said District Court of October 30, 1964, and February 23, 1966, whereby said RUSSELL HARDY, SR. has received judgments in his favor in excess of $40,000.00.

4. RUSSELL HARDY, SR. agrees to pay directly all expenses incident to said appeal and shall contract directly with Thiel Press in printing all briefs and joint appendix.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals all on the date first hereinabove written.

> /s/ Russell Hardy, Sr. (Seal)
> BROOKHART, BECKER & DORSEY
> /s/ By Smith W. Brookhart"

At the same time, he executed the following two promissory notes:

"NOTE"

> Washington, D.C.,
> March 3, 1966

"On demand I promise to pay to the order of Brookhart, Becker & Dorsey Five Thousand and 00/00 ($5,000.00) Dollars For value received,

with interest at the rate of six per cent per annum until paid.

Payable at Suite 1300, 1700 K Street, N.W., Washington, D. C.

/s/ Russell Hardy, Sr.
Washington, D.C.

No. 1

"NOTE"

Washington, D.C.,
March 3, 1966

Upon decision of Court of Appeals in appeal of Civil Action 4075-61 I promise to pay to the order of Brookhart, Becker & Dorsey One Thousand five hundred and 00/00 ($1,500.00) Dollars for value received, with interest at the rate of zero percent per annum until paid.

Payable at Suite 1300, 1700 K Street, N.W., Washington, D. C.

/s/ Russell Hardy, Sr.
Washington, D. C.

No. 2"

It is these two notes and the above agreement which are the matters in controversy.

Appellant, in a previous appeal in this matter, claimed an offsetting amount of $5,000.00 allegedly due him by appellees for legal services rendered by him to them. In the light of the opinion of this Court written by McWilliams, J., in *Hardy v. Brookhart, et al,* 252 Md. 107, 249 A. 2d 148 (1969), the appellant has abandoned that contention. Instead, for the purposes of this appeal he has harkened back to substantially the same position first espoused by him in August, 1967, in the Circuit Court for Montgomery County (before removal of the case to Carroll County), namely, that the notes in question were "without consideration," that the law firm had been paid in full, that the legal service to which the notes were to be applied had not in fact been rendered and that he is not indebted to the appellees herein. We disagree.

In his brief, Hardy alleges eight assignments of error, which for purposes of this opinion will be condensed. First, Hardy urges that he did not read the questioned contract, or at least did not read it carefully, and that the presumption of fraud and invalidity which attends challenged transactions between attorneys and their clients should be applied in this case. At this juncture it should be pointed out that appellant Hardy has been a practicing attorney since 1918, and served for an unstated period of time as a Special Assistant to the Attorney General of the United States. At the time of the execution of the contract in question, he had been an attorney for over 47 years and it strains one's credulity to conclude that he did not read the contract carefully. Significantly, this third agreement was quite similar to the one signed by the parties almost a year earlier (March 16, 1965). In this third agreement, Hardy again retained the law firm for purposes of an appeal to the United States Court of Appeals, agreed to pay $1,500.00 for their services, and executed a promissory note payable at the time of the decision by the Court of Appeals. Hardy, as part of the agreement, executed a promissory note payable on demand to the appellees for $5,000.00 plus 6% interest. *Twice in the same agreement* appellant acknowledged this $5,000.00 debt to the law firm, and the agreement recites that this debt "represents the *additional amount payable by RUSSELL HARDY, SR. to said firm,* pursuant to said AGREEMENT of November 27, 1963, and by virtue of the judgments of said District Court of October 30, 1964 and February 23, 1966, *whereby said RUSSELL HARDY, SR. has received judgments in his favor in excess of $40,000.00.*" (emphasis supplied)

Hardy also contends that he was in an attorney-client relationship with the appellees, and the fact that he was himself an attorney did not make him "fair game" for any violation of the "implicit confidence and trust" which he had placed in them. While we are aware of the Maryland cases which recite the general rule that "any disputed transaction between an attorney and client is prima

facie fraudulent and invalid, and the burden is upon the attorney to show that he used no undue influence or deception * * *," *Baker v. Otto*, 180 Md. 53, 55, 22 A. 2d 924 (1941), so too are we aware that "* * * in determining whether an attorney * * * has met the burden of proof which the law casts upon him, the court must consider all the facts and circumstances in each particular case." *Baker v. Otto, supra*, at p. 56. The cases which recite the general rule involve situations where the court found the attorney's allegations "incredible," [2] where the client was an "excessive drinker" who, during a period of severe financial need signed away the corpus of a $32,-500.00 trust to his attorney (also the trustee) for $700.-00,[3] or where there was ample evidence of a possible conflict of interest on the part of the attorney,[4] and for those reasons, they are not apposite to the case at bar. Rather, we believe that the rule first enunciated in the case of *Roman v. Mali*, 42 Md. 513 (1875), is more apropos. In that case the Court stated:

> "If the court be satisfied that the party holding the relation of client performed the act or entered into the transaction voluntarily, deliberately, and advisedly, knowing its nature and effect, and that no concealment or undue means were used to obtain his consent to what was done, the transaction will be maintained." 42 Md. 513, at 559.

In the instant case we are presented with an attorney of long standing and experience, who executed three separate documents at the same time, all of them relatively short, simple, and strikingly similar to those executed by him one year earlier in the same action. The instruments in question appear to be representative of the pattern which was common to all of the dealings between these

2. Baker v. Otto, supra.
3. Hughes v. McDaniel, 202 Md. 626, 98 A. 2d 1 (1953).
4. Strickler Engineering Corp. v. Seminar, Inc., 210 Md. 93, 122 A. 2d 563 (1956).

parties, and one wonders exactly what appellant Hardy thought he was signing on March 3, 1966, if he was in fact not aware of the nature of the challenged documents. In the light of all the factors involved, Hardy must be held to the terms of the documents he signed.[5]

Hardy further contends, whether or not this Court finds that he signed the contract and the notes voluntarily, that there was no consideration given for any of them, and for that reason they were unenforceable obligations. Under his version, the alleged consideration for the $5,-000.00 promissory note executed March 3, 1966, was illusory as it was for payment for services rendered by the appellees in obtaining for him something to which he was already legally entitled, namely, the one-half interest in the proceeds of the sale of the real estate formerly held by him and his former wife as tenants by the entireties. On the other hand, as we construe the appellees' argument, they contend that the $5,000.00 note represents security for an antecedent obligation owed by Hardy. We think a reading of the agreements between the parties substantiates this latter construction.

Hardy's antecedent obligation arose from the first agreement dated November 27, 1963. In that contract there is a provision for the payment of $5,000.00 should there be a recovery in excess of $40,000.00. There were, of course, successive judgments in the district court for $22,652.07 and $22,510.33. The second judgment is the one which is bottomed on Hardy's one-half share of the proceeds from the sale of the residence, to which amount, according to him, he was already entitled. Accordingly, he argues that the $40,000.00 figure referred to in the first agreement executed November 27, 1963, meant $40,000.00 over and above his rightful share of the proceeds from the sale of the residence.

In the event of an ambiguity in the terms of a contract, the courts must necessarily look to the intention of

5. See Merit Music v. Sonneborn, 245 Md. 213, 220, 225 A. 2d 470 (1967); Rossi v. Douglas, 203 Md. 190, 199, 100 A. 2d 3 (1953).

the parties at the time of the making of the contract. As Judge Barnes writing for this Court previously stated:

"The primary rule in the construction and interpretation of contracts is to ascertain and give effect to the intention of the parties to the contract, unless that intention contravenes some settled public policy or a positive rule of law or property." *Cadem v. Nanna*, 243 Md. 536, 543, 221 A. 2d 703 (1966).

We believe that the $40,000.00 figure referred to in the contract of November 27, 1963, was meant to include appellant Hardy's share in the proceeds from the sale of the house. At the time of the making of the contract, the parties undoubtedly realized that, if a trial ensued (as was the case here) the court might well dispose of all the assets in its control, *including appellant's one-half share*. If the parties intended that Hardy's interest in the property as a tenant by the entirety was not to be included in the $40,000.00 figure mentioned in the contract, they would have logically so stated. Inasmuch as the house had been sold in 1961 (two years prior to the initial agreement), the amount realized from the sale ($66,060.80) was known to the parties at the time of the making of the contract, and it would have been a simple matter for them to stipulate an amount $40,000.00 in excess of appellant Hardy's one-half interest (i.e., $73,030.40, or $40,-000.00 plus one-half of the $66,060.80). To accept Hardy's view is to rule that the contract required at least a recovery of over $60,000.00 instead of the $40,000 plainly stated in the agreement.

Hardy cannot gainsay the fact that there have been judgments rendered on his behalf in excess of $40,000.00 and that by virtue of the November 27, 1963 agreement, the appellees became entitled to an additional $5,000.00 fee. The note of March 3, 1966, in the amount of $5,000.00 represents security for this antecedent obligation.

With respect to a note given to secure an antecedent obligation we find enlightenment in the following provi-

sion from the Maryland Code (1964 Repl. Vol.) Art. 95B, § 3-408 (Uniform Commercial Code):

> "§ 3-408. Consideration.
>
> Want or failure of consideration is a defense as against any person not having the rights of a holder in due course (§ 3-305), except that no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind.
> * * *"

See also *Katski v. Boehm,* 249 Md. 568, 241 A. 2d 129 (1968). The official comment following this section also indicates that an antecedent obligation may be a valid consideration for a promissory note.[6] Therefore, since there existed an antecedent obligation at the time of the making of the note, the note itself required no consideration.[7]

Appellant next contends that there was no consideration for the $1,500 note executed March 3, 1966. The general rule, which applies to this particular situation, is that "* * * mutual promises, whereby the promisor undertakes an act or forbearance detrimental to the promisor or beneficial to the promisee, constitute sufficient consideration for one another." *Hercules Powder Co. v. Harry T. Campbell Sons Co.,* 156 Md. 346, 144 A. 510, 62 A.L.R. 1497 (1929). In the case before us, the consideration given for Hardy's executing the $1,500 note was the future services to be rendered by the appellees pursuant to the contract of March 3, 1966.

In regard to that contract (reproduced above), we think it a fair interpretation that the appellees wanted acknowl-

---

6. Note of the official comment to § 3-408 reads as follows:
   "The except clause is intended to remove the difficulties which have arisen where a note or a draft * * * is given as payment or as security for a debt already owed by the party giving it * * *. The provision is intended to change the result of decisions holding that where no extension of time or other concession is given by the creditor the new obligation fails for lack of legal consideration. * * *"
7. Compare provisions of N.I.L., 1957 Maryland Code, Art. 13 § 46, which was in effect prior to enactment of the U.C.C.

edgment of Hardy's prior indebtedness, and his execution of the $5,000.00 note evidencing that debt was part of his consideration given in return for the future services to be rendered by the firm. We are not here dealing with any variation between the recitals and the operative part of the contract; in the instant case, they are in complete harmony, and the one tends to explain and enforce the other. Simply stated, appellees agreed to represent Hardy on his appeal to the United States Court of Appeals in return for his paying them $1,500 and executing the two promissory notes as evidence of the then-current state of his indebtedness.

Finally, we agree with Judge Weant who tried this case on the merits in the court below, that Hardy was late in his challenge to the existence of the partnership. The titling of the original suit brought by the appellees styled the plaintiffs as partners. The affidavit filed by the appellees with their declaration averred that Hardy was indebted to them as "co-partners doing business as Brookhart, Becker & Dorsey." The appellant failed to deny this in any succeeding pleadings (Maryland Rules 311 and 301 e) and indeed did not raise the point until over two years after the filing of the declaration and then during the examination of one of the appellees upon the trial on the merits. We are also of the opinion that the appellant's contention that the money, if owed to anyone, is owed to Brookhart and McCann individually, fails to take into consideration the law in Maryland regarding merger of contracts as it applies to the three agreements executed by Hardy. *Trotter v. Lewis*, 185 Md. 528, 533, 45 A. 2d 329 (1946) ; *Hercules Powder Co. v. Campbell, supra,* and cases collected in 5 M.L.E. 488, *Contracts* § 216.

*Judgment affirmed, appellant to pay costs.*